811 So.2d 308 (2001)
Shelley L. DEARMAN (Mitchell), Appellant,
v.
James A. DEARMAN, Jr., James A. Dearman, Sr. and Diane Dearman, Appellees.
No. 1999-CA-01106-COA.
Court of Appeals of Mississippi.
January 16, 2001.
*309 Karen J. Young, Gulfport, Attorney for Appellant.
Timothy Lee Murr, Harry M. Yoste, Jr., Gulfport, Attorneys for Appellees.
Before McMILLIN, C.J., LEE, and PAYNE, JJ.

*310 PROCEDURAL HISTORY
PAYNE, J., for the Court:
¶ 1. In November of 1993, Shelley Dearman (Shelley) and James A. Dearman, Jr. (Jamie) were granted an irreconcilable differences divorce in the Harrison County Chancery Court. Custody of Jamie and Shelley's baby girl was awarded to the child's paternal grandparents, co-defendants James A. Dearman, Sr. and Diane Dearman. In August 1995, Shelley filed a motion to set aside or modify the judgment, which the chancellor denied. After a two day trial in May 1999, the chancellor changed custody from the grandparents to joint legal and joint physical custody with Shelley and Jamie, reserving visitation rights for the paternal grandparents. With the current appeal, Shelley asks this Court to reverse on the custody issue and to award primary custody of the child to her.

FACTS
¶ 2. Shelley Dearman became pregnant at age fifteen and married then nineteen year old Jamie Dearman, the child's father. Their daughter, Brooke, was born March 26, 1993, and after a marriage of fifteen months, the Dearmans divorced in November 1993. The chancellor granted the divorce based on irreconcilable differences and awarded custody of the child to James Dearman Sr. and Diane Dearman, the paternal grandparents.
¶ 3. A trial was held concerning Shelley's motion for modification. The chancellor adjudged that custody of the minor child should be joint legal and joint physical between Shelley and Jamie, and that the paternal grandparents would have visitation rights with the child. Shelley now appeals and asks this Court to award her primary custody of the child.

ANALYSIS OF THE ISSUES PRESENTED

STANDARD OF REVIEW
¶ 4. With this appeal, Shelley Dearman Mitchell raises the following issues for our review:
I. THE TRIAL COURT IGNORED THE "TENDER AGE DOCTRINE" IN NOT AWARDING PRIMARY CUSTODY OF THE MINOR CHILD TO SHELLEY DEARMAN MITCHELL.
II. THE TRIAL COURT ERRED IN CALCULATING CUSTODY RIGHTS EACH PARENT WOULD HAVE AND IN SETTING VISITATION RIGHTS WITH THE PATERNAL GRANDPARENTS.
III. THE TRIAL COURT FAILED TO ADDRESS THANKSGIVING VISITATION WITH THE CHILD.
IV. THE TRIAL COURT ERRED IN ALLOWING TESTIMONY CONCERNING CIRCUMSTANCES AND CONDITIONS THAT EXISTED PRIOR TO THE AUGUST 1, 1995 JUDGMENT.
¶ 5. Our standard of reviewing a chancellor's award of custody or refusal to modify custody is well-stated: "we will not disturb the findings of a chancellor unless those findings are clearly erroneous or an erroneous legal standard was applied." Mercier v. Mercier, 717 So.2d 304(¶ 8) (Miss.1998) (citations omitted). As described herein, we affirm the chancellor on all issues.

DISCUSSION OF THE ISSUES

I. THE TRIAL COURT IGNORED THE "TENDER AGE DOCTRINE" IN NOT AWARDING PRIMARY CUSTODY OF THE MINOR CHILD TO SHELLEY DEARMAN MITCHELL.
*311 ¶ 6. Shelley argues the chancellor erred in awarding joint legal and joint physical custody of the minor to Jamie and herself when neither of them asked for this arrangement. Rather, Shelley petitions now for primary care, custody and control over the child with reasonable visitation rights to Jamie. Alternatively, if we choose not to alter the custody arrangement, Shelley asks that we render or remand so that physical custody can be granted to Shelley during the school year with reasonable visitation rights to Jamie.
¶ 7. Finding neither parent to be more fit than the other, the chancellor awarded physical custody of the child to Jamie during the academic school year, every second and fourth weekend of each month, and seven consecutive days each summer and various holidays. Jamie's parents were given visitation every fifth weekend plus seven consecutive days during the summer. Shelley was given custody for six weeks during the summer and every first and third weekend of the month. Shelley objects to this schedule because, by her calculations, this arrangement only leaves her one-fourth of the year with her daughter.
¶ 8. Shelley contends that the chancellor failed to take into consideration the Albright factors, and she places much emphasis on the "tender age doctrine." First, regarding the tender age doctrine, "[t]he tender years doctrine has been gradually weakened in Mississippi jurisprudence to the point of now being only a presumption. Today, the age of a child is simply one of the factors that we consider in determining the best interests of the child." Mercier, 717 So.2d at (¶ 14) (citing Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983)).[1] The child's age is not the sole determinant, but is only one of the elements to consider in deciding custody.
¶ 9. In the Dearmans's case, the chancellor stated in his judgment:
The Court has applied each of the factors outlined in Albright and considered the totality of the circumstances as shown in the proof at trial.... The Court having weighed the Albright factors finds each parent has their strengths and each their weaknesses. Even after weighing all the factors, neither parent proved themselves clearly more fit than the other. Without detailing each factor in the analysis, the Court did have certain concerns which influenced its custody decision....
The chancellor then went on to discuss specifically Shelley's questionable home environment versus Jamie's stable home, and found that Shelley's home lacked those religious influences that were found in Jamie's home. The chancellor also noted Shelley's lack of involvement in the child's school and deemed the best interests of the child would not permit her transferring to another school, since the child had already developed strong relationships with her teachers and fellow students. We find the chancellor most certainly had the child's best interests in mind in awarding custody, and his analysis in his judgment was succinct enough to meet the Albright standard, since he said the parents were neither one more fit than the other and were the same in all respects except for those he chose to delineate in his order.
¶ 10. We note that with his modification the chancellor awarded joint legal and joint physical custody to both Shelley and Jamie, with visitation rights to Jamie's parents. Currently, Miss.Code Ann. § 93-5-24(2) *312 (Rev.1994) reads: "Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents." According to Morris v. Morris, 758 So.2d 1020 (Miss.Ct.App.1999), this award of joint custody would be improper in this irreconcilable differences divorce since neither party asked for joint custody. However, looking to the actual visitation and custody schedule, we find that in reality, the chancellor's custody award was mislabeled as "joint custody" when it amounted to de facto physical custody to Jamie with liberal visitation rights to the mother. Thus, we will allow the modification to stand.
¶ 11. This case highlights a problem which has come before this Court before without an entirely satisfactory answer. From time immemorial, the chancery court has retained general jurisdiction over matters of custody and support of children in the case of divorce. See Miss. Const., § 159 (1890) and Hutchinson's Code 1848, ch. 34, art. 2(7), presently codified as § 93-5-23, MCA. Now we are faced with the problem that chancellors are ordering joint custody even without a request by the parents for such an arrangement. The question arises, do we have the authority to affirm such actions of a chancellor?
¶ 12. In order to address that problem, we need to look at the legislative history of two new statutory remedies that have been created within the last twenty-five or so years. The first is irreconcilable differences divorces. The second is the concept of joint custody. Each of these is a statutory matter, not included in the common law. In fact, since divorce law as a whole is statutory, the words of the statute are to be strictly construed. See Massingill v. Massingill, 594 So.2d 1173, 1178 (Miss.1992).
¶ 13. First let us look at irreconcilable differences divorce. Chapter 451 of the 1976 Laws of Mississippi allows a divorce to be granted where the parties agree that there are irreconcilable differences in the marriage and where the parties show by written agreement that they have made adequate and sufficient provision for the custody and maintenance of children and settlement of any property rights between them.[2] Various other provisions were made for this new and different kind of divorce such as having to be on file sixty days before it could be heard, allowing it to be granted in vacation as well as in term time, allowing it even though the "offended" spouse had not separated from the marital home, and amending other sections to conform to this change.[3]
¶ 14. In 1978, that law was amended, altering various words and adding an exception to the original rule that an irreconcilable differences divorce could not be granted if there had been a contest or denial.[4] This new exception permitted an irreconcilable differences divorce if the party filing such contest or denial was granted leave and order of the court to withdraw or cancel his or her contest or denial. No further change was made to § 93-5-2 until 1990 when the Legislature allowed the parties who desired an irreconcilable differences divorce but could not agree on the terms of property settlement or child custody and support to consent to *313 let the court determine those things instead of requiring that the parties agree.[5]
¶ 15. We look next to the inception and implementation of "joint custody." Beginning in the 1980s and continuing thereafter, various states began creating or recognizing the concept of joint custody.[6] The Mississippi chapter was codified as § 93-5-24, following § 93-5-23 which was the general custody statute under the terms of which custody had been determined in the past. Section 1 of the new bill set forth the types and combinations of joint custody and ended with the provision that the court may require parents to submit a plan for the implementation of joint custody. Section 2 of bill provided that:
(1) Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents.

(2) In other cases, joint custody may be awarded, in the discretion of the court, upon application of one (1) or both parents.

(3) There shall be a presumption that joint custody is in the best interests of a minor child where both parents have agreed to an award of joint custody.

. . .
(5) Any order for joint custody may be modified or terminated upon the petition of both parents or upon the petition of one (1) parent showing that a material change in circumstances has occurred....
1983 Miss. Laws Ch. 513, S. Bill 2130 (emphasis added). At the time of the creation of joint custody, irreconcilable differences divorces had to be by mutual agreement of the parties in regard to custody and finances. See Alexander v. Alexander, 493 So.2d 978, 980 (Miss.1986); Gallaspy v. Gallaspy, 459 So.2d 283, 287 (Miss.1984). The above-cited excerpts from section 2 show how agreement was a very significant part of the award of joint custody, even though there existed a presumption in favor of the best interests of the child. Section 3 of the 1983 law, which amended Miss.Code Ann. § 93-5-23, added: "Orders touching on the custody of the children of the marriage may be made in accordance with the provisions of Section 1 and 2 of Senate Bill No. 2130, 1983 Regular Session [§ 93-5-24 MCA]." By virtue of this new law, the court now was being directed to consider the new joint custody section in making its decision relating to custody.
¶ 16. In 1985, § 93-5-23 (the general custody and support statute) was amended to direct the court to deal with the issue of health insurance and to require a bond to be made for payment of child support if the defaulting party has allowed the support to remain unpaid for over thirty days.[7] In 1989, without changing the reference to the joint custody statute, Miss. Code Ann. § 93-5-23 was again amended to require an investigation if there were an allegation of child abuse.[8] In 1993, another amendment further modified this section in regard to cases of child abuse, and incorporated unchanged the language *314 about joint custody.[9] In 1994, further changes were made with regard to appointment of guardians ad litem and decisions in regard to termination of parental rights, and the language, "Orders touching on the custody of the children of the marriage may be made in accordance with the provision of Section 93-5-24," was re-enacted without change.[10]
¶ 17. In the 2000 session, the Legislature amended the joint custody statute, § 93-5-24, to change Section 1(1) from "custody may be awarded" in the best interests of the child to "custody shall be awarded." [11] (emphasis added) Also added to this section was a new subsection (7) to read, "There shall be no presumption that it is in the best interest of a child that a mother be awarded either legal or physical custody."[12]
¶ 18. In reviewing the histories of the concepts of "irreconcilable difference divorces" and "joint custody," we see that although the legislature has had numerous opportunities to change the requirement that joint custody be requested by both parents in an irreconcilable differences divorce, they have not done so. The rule of statutory construction is that when a statute is re-enacted without change the legislature reaffirms all the provisions therein and accepts the construction the courts have placed upon such statutes. See City of Mound Bayou v. Johnson, 562 So.2d 1212, 1234-35 (Miss.1990). For that reason, we cannot assume that the legislature has intended to remove the requirement that parents must ask for a joint custody arrangement if they are to receive such award. Since the resolution of this misunderstanding is not essential to the decision in this case, we believe that this is the ideal time to bring the situation to the attention of chancellors and legislators alike for some clarification for future cases.
¶ 19. Here, both Shelley and Jamie wanted custody and they did not petition for joint custody. Thus, an award of joint custody would not be proper. Morris, 758 So.2d at (¶ 12). Although the chancellor labeled his award joint custody, in reality it was de facto custody to the father with liberal visitation rights to the mother. The supreme court has held that a chancellor's result will be upheld even if he stated the wrong reason. Love v. Barnett, 611 So.2d 205, 207 (Miss.1992). Therefore, we affirm the chancellor on this issue of custody as to each of the child's parents.

II. THE TRIAL COURT ERRED IN CALCULATING CUSTODY RIGHTS EACH PARENT WOULD HAVE AND IN SETTING VISITATION RIGHTS WITH THE PATERNAL GRANDPARENTS.
¶ 20. Having already addressed custody with the first issue, we next look to the chancellor's awarding Jamie's parents visitation rights. The Mississippi Code addresses the rights of grandparents concerning visitation of their grandchildren.
[T]he court may, in its discretion, if it finds that such visitation rights would be in the best interest of the child, grant to a grandparent reasonable visitation rights with the child. Whenever visitation rights are granted to a grandparent, the court may issue such orders as shall be necessary to enforce such rights and *315 may modify or terminate such visitation rights for cause at any time.
Miss.Code Ann. § 93-16-5 (Rev.1994).
(1) Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child or terminating the parental rights of one (1) of the parents of a minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.
(2) Any grandparent who is not authorized to petition for visitation rights pursuant to subsection (1) of this section may petition the chancery court and seek visitation rights with his or her grandchild, and the court may grant visitation rights to the grandparent, provided the court finds:
(a) That the grandparent of the child had established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child; and
(b) That visitation rights of the grandparent with the child would be in the best interests of the child.
Miss.Code Ann. § 93-16-3(2)(a b) (Supp. 2000) (emphasis added).
¶ 21. In Jamie's answer to Shelley's motion for modification and his counterclaim for custody, Jamie asks the chancellor to award physical custody to himself and to award reasonable and generous visitation rights to his parents. As well, Jamie's parents filed an answer to Shelley's motion and also filed a counter-claim. With their counter-claim, the Dearmans asked the chancellor to grant them grandparents visitation privileges pursuant to Miss.Code Ann. § 93-16-1[13] once the chancellor had awarded custody to one of the natural parents. The Dearmans argued that they had established a viable relationship with the child and such visitation would be in the child's best interest. We find that the Dearmans's behavior conformed to the applicable statutes cited above, and the chancellor was not erroneous in making such award. Thus, we affirm the award of visitation rights to the grandparents.

III. THE TRIAL COURT FAILED TO ADDRESS THANKSGIVING VISITATION WITH THE CHILD.
¶ 22. The chancellor omitted in his judgment a specification concerning who would get the child on Thanksgiving. The chancellor did not mention splitting visitation for other "common holidays" either, including Memorial Day, Easter, and Labor Daybut he did mention Mardi Gras and Spring Break. So, it is unclear whether the chancellor intended to not take up the issue of Thanksgiving or whether he inadvertently omitted this holiday that in most every community includes at least two days off of school.
¶ 23. After delineating those dates set aside for Shelley's visitation, the chancellor set forth certain dates Jamie was to have visitation privileges. At the conclusion of those dates, the chancellor awarded to Jamie, "All other periods not in paragraph VIII a, b. c, and d." We find that this *316 "catch-all" provision, then, certainly includes the Thanksgiving holiday.
¶ 24. "`[V]isitation and restrictions placed upon it are within the discretion of the chancery court.' This Court is bound to accept the findings of the chancellor unless he is manifestly wrong or there is clearly an abuse of discretion." Martin v. Coop, 693 So.2d 912, 914 (Miss. 1997) (citations omitted). Whether or not we think the chancellor was intentional or inadvertent in not addressing Thanksgiving visitation, unless we find manifest error or an abuse of discretion, we cannot reverse. Since a provision is made in the schedule for those days not specifically delineated in the schedule, we affirm as there is no manifest error.

IV. THE TRIAL COURT ERRED IN ALLOWING TESTIMONY CONCERNING CIRCUMSTANCES AND CONDITIONS THAT EXISTED PRIOR TO THE AUGUST 1, 1995 JUDGMENT.
¶ 25. Shelley argues the chancellor erred in considering evidence of events that occurred prior to the 1995 order which overruled her motion for custody modification. According to Lackey v. Fuller, 755 So.2d 1083 (Miss.2000), this practice is not permissible because of the res judicata principle. In Fuller, the parties were divorced due to irreconcilable differences, and the chancellor had originally found that both parties were fit and suitable parents. The supreme court stated:
Because the chancellor specifically found that both parents were fit, pre-divorce conduct is res judicata as to the hearing regarding the modification of child custody. The chancellor clearly abused his discretion in revisiting that which had already been laid to rest.... As such, the only evidence the judge should have admitted at the hearing was evidence of post-judgment conduct.
Fuller, 755 So.2d at 1086-87 (¶¶ 14, 18). In Fuller the supreme court found that the chancellor used the modification to punish the wife for her indiscretions and that this was not permissible because a "change in custody should never be made for the purpose of rewarding one parent or punishing another." Id. at 1087 (¶ 20).
¶ 26. In the present case, the chancellor stated that he was going to treat this case as an original custody case and was going to use the Albright factors, since the grandparents originally had custody and the parents were now seeking such. He also described how he had been with this case since the couple divorced and when Jamie was previously awarded custody; he commented that he was pleased that "Shelley had made great strides since the last time she's been in here," and that he recognized that Jamie had problems with Shelley's mother. However, there is no indication in the chancellor's opinion that he considered anything that happened prior to the 1995 order. In fact, he stated, "I feel like both parents are good parents. The only thing that bothers me is I have to choose." Though the chancellor may have been aware of Shelley's rocky past, he obviously did not hold that against her in making his decision, as his judgment reflects only incidents that occurred since 1995. Thus, this issue is without merit.

CONCLUSION
¶ 27. We find that the chancellor's award of custody, although mislabeled, was proper; that grandparents visitation rights were properly awarded in accordance with statute; that the chancellor's omission of the Thanksgiving holiday in the visitation schedule was not error since a catch-all provision encompassed those holidays not delineated in such a schedule; and that the *317 chancellor was proper in not accepting pre-1995 evidence in his decision to modify custody. Thus, we affirm on all issues.
¶ 28. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, and THOMAS, JJ., concur. CHANDLER, J., not participating.
NOTES
[1] Additionally, it should be noted that the 2000 legislature specifically removed any presumption which might favor the mother in custody matters. See 2000 Miss. Laws Ch. 453, Section 1.
[2] This concept was codified as Miss.Code Ann. § 93-5-2 (Supp.1976).
[3] See 1976 Miss. Laws Ch. 451, Sections 3 and 4.
[4] See 1978 Miss. Laws Ch. 367, Section 1.
[5] See 1990 Miss. Laws Ch. 584, Section 1.
[6] See Gerald W. Hardcastle, Joint Custody: A Family Court Judge's Perspective, 32 Fam. L.Q. 201 (1998) for a brief history of the codification of the "joint custody" concept as it occurred in various states. See also Stephanie N. Barnes, Strengthening the Father-Child Relationship Through a Joint Custody Presumption, 80 Calif. L. Rev 615 (1999).
[7] See 1985 Miss. Laws, Ch. 518, Section 15.
[8] See 1989 Miss. Laws, Ch. 434, Section 1.
[9] See 1993 Miss. Laws, Ch. 559, Section 2.
[10] See 1994 Miss. Laws, Ch. 591, Section 6.
[11] See 2000 Miss. Laws, Ch. 453, Section 1.
[12] Id.
[13] "Any court of this state which is competent to decide child custody matters shall have jurisdiction to grant visitation rights with a minor child or children to the grandparents of such minor child or children as provided in this chapter." Miss.Code Ann. § 93-16-1 (Rev.1994).