**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CT-01066-SCT**

*LAINIE BELL CRIDER*

*v.*

*JOHN PAUL CRIDER, JR.*

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/23/2003 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN A. FERRELL |
| ATTORNEY FOR APPELLEE: | JASON D. HERRING |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED; THE JUDGMENT OF THE ALCORN COUNTY CHANCERY COURT IS AFFIRMED - 03/31/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     This case addresses the authority of a chancellor to grant joint custody of a child to its

parents in an irreconcilable differences (ID) divorce proceeding.  Although it is a case of first

impression for this Court, the Mississippi Court of Appeals has interpreted Miss. Code Ann.

§ 93-5-24(2)[1] to prohibit a chancellor from awarding joint custody in ID cases unless both

parents have specifically requested joint custody.  Thus, when one or both parties to an ID

---

[1] Miss. Code Ann. § 93-5-24 is Mississippi's joint custody statute.

divorce request primary custody, but both parties consent in writing for the chancellor to make the custody determination, the Court of Appeals has held that a chancellor is prohibited from granting joint custody, even if the chancellor determines that joint custody is in the child's best interest. We reject the Court of Appeals' interpretation because it is not consistent with our statutory or case law, which both require a chancellor to make determinations that are in the best interest of the child in all circumstances.

## FACTS

¶2. John and Lainie Crider are parents of a son who was born September 5, 2001. Approximately a year later, the Criders separated, and John filed for divorce on October 11, 2002, on grounds of adultery and in the alternative irreconcilable differences. Lainie filed a cross claim for divorce on grounds of habitual cruel and inhuman treatment and in the alternative irreconcilable differences. Each requested sole custody of their son, with visitation for the other party.

¶3. At the January 13, 2003, trial, John and Lainie filed a written consent to a divorce on the ground of irreconcilable differences and asked the chancellor to decide the remaining issues of primary custody, property settlement, and support, pursuant to Miss. Code Ann. § 93-5-2(3).[2] The chancellor conducted a two-day trial, in which she heard testimony from numerous witnesses, including both parents of each party, friends of the parties, and Lainie's two sisters. After a thoughtful and thorough analysis of the *Albright*[3] factors in relation to the facts of the case, the chancellor found that "both parties have their flaws. They are equally

---

[2] See footnote 5 for the language of this statute.

[3] See *Albright v. Albright*, 437 So.2d 1003, 1005 (Miss. 1983).

good and equally bad." She found it particularly significant that the parties, on their own initiative, had essentially split time in caring for the child since the separation. Additionally, both had very supportive families that were willing to help care for their son. She then found that, although joint custody was not specifically requested, joint custody was in their son's best interest. "[B]oth parties love this child and enjoy a comparable bond with him, and . . . his best interest would not be served by severing the bond he holds with each parent at this delicate age." She awarded joint legal and physical custody until the summer prior to their son's beginning kindergarten. She also stated that the matter should be reset for a hearing in June, 2005, at which time a review of custody would be made.

¶4. Lainie appealed, asserting that § 93-5-24(2) prohibits the chancellor from awarding joint custody unless both parties specifically request that joint custody be awarded. A divided Court of Appeals agreed and reversed the chancellor, stating that it had interpreted § 93-5-24(2) on several occasions to mean that each party must consent to joint custody in an ID divorce proceeding.[4] *Crider v. Crider*, 2004 WL 1728594 (Miss. Ct. App. 2004). However, the Court of Appeals pointed out that the rightness of the need for a joint request for joint custody remains unaddressed by this Court. *Id.* at *3. The two dissenting Court of Appeals judges argued that awarding joint custody is discretionary with the court. *Id.* at *3-*4 (Lee, J., dissenting).

¶5. John filed a petition for certiorari, arguing that this is a fundamental issue of broad public importance that this Court should determine. We agreed and granted certiorari. The

---

[4] See *Dearman v. Dearman*, 811 So.2d 308 (Miss. Ct. App. 2001); *Wolfe v. Wolfe*, 766 So.2d 123 (Miss. Ct. App. 2000); *Morris v. Morris*, 758 So.2d 1020 (Miss. Ct. App. 1999).

issue, in essence, is whether a statute which is susceptible to multiple interpretations should be interpreted to prohibit a chancellor from awarding custody based on the best interest of a child in ID divorce cases. Because we hold that it should not, we reverse the Court of Appeals' judgment and affirm the chancellor's judgment.

## ANALYSIS

¶6. Mississippi case law has clearly declared time and time again that the polestar consideration in all cases dealing with child custody and visitation is the best interest and welfare of the child. *Brekeen v. Brekeen,* 880 So.2d 280, 283 (Miss. 2004); *Woodell v. Parker*, 860 So.2d 781, 788 (Miss. 2003); *Sellers v. Sellers*, 638 So.2d 481, 485 (Miss. (1994); *Moak v. Moak*, 631 So.2d 196, 198 (Miss. 1994); *Albright v. Albright* 437 So.2d 1003, 1005 (Miss. 1983). The Legislature, in Miss. Code Ann. § 93-5-24(1) states: "Custody shall be awarded as follows according to the *best interests of the child*. . . ." (emphasis added). Additionally, in 1996 this Court departed from the then-existing case law in a custody modification case, because it was not in the best interest of the child, stating:

> However, we take this opportunity to clarify that a chancellor is **never obliged to ignore a child's best interest** in weighing a custody change; in fact, **a chancellor is bound to consider the child's best interest above all else**. "Above all, in 'modification cases, as in original awards of custody, we never depart from our polestar consideration: the best interest and welfare of the child.' "

*Riley v. Doerner*, 677 So.2d 740, 744 (Miss. 1996) (citing *Ash v. Ash*, 622 So.2d 1264, 1266 (Miss. 1993) (citing *Marascalco v. Marascalco*, 445 So.2d 1380, 1382 (Miss. 1984))) (emphasis added).

4

¶7.     In *Morris v. Morris*, 758 So.2d 1020 (Miss. Ct. App. 1999), the Court of Appeals first interpreted the statutory language of Miss. Code Ann. § 93-5-24(2), which reads: "[j]oint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, ***upon application of both parents***." Miss. Code Ann. § 93-5-24(2) (emphasis added). This subsection is part of the general joint custody statute.[5] As we discuss below, because the statute does not define what is meant by "application of both parents," the

_____

[5] Subsections (1)-(4) read as follows:
(1) Custody shall be awarded as follows according to the best interests of the child:
(a) Physical and legal custody to both parents jointly pursuant to subsections (2) through (7).
(b) Physical custody to both parents jointly pursuant to subsections (2) through (7) and legal custody to either parent.
(c) Legal custody to both parents jointly pursuant to subsections (2) through (7) and physical custody to either parent.
(d) Physical and legal custody to either parent.
(e) Upon a finding by the court that both of the parents of the child have abandoned or deserted such child or that both such parents are mentally, morally or otherwise unfit to rear and train the child the court may award physical and legal custody to:
(I) The person in whose home the child has been living in a wholesome and stable environment; or
(ii) Physical and legal custody to any other person deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.
In making an order for custody to either parent or to both parents jointly, the court, in its discretion, may require the parents to submit to the court a plan for the implementation of the custody order.
(2) Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents.
(3) In other cases, joint custody may be awarded, in the discretion of the court, upon application of one or both parents.
(4) There shall be a presumption that joint custody is in the best interest of a minor child where both parents have agreed to an award of joint custody.
Miss. Code Ann. § 93-5-24(1),(2),(3),(4).

wording of this statute is susceptible to varying interpretations, particularly in light of the history and language of § 93-5-2,[6] the ID divorce statute.

¶8. A brief historical summary of the adoption and modifications of the two statutes at issue in the present case is helpful.[7] Prior to the adoption of the ID divorce statute, a party seeking

[6] This statute states in pertinent part:

(1) Divorce from the bonds of matrimony may be granted on the ground of irreconcilable differences, but only upon the joint complaint of the husband and wife or a complaint where the defendant has been personally served with process or where the defendant has entered an appearance by written waiver of process.

(2) If the parties provide by written agreement for the custody and maintenance of any children of that marriage and for the settlement of any property rights between the parties and the court finds that such provisions are adequate and sufficient, the agreement may be incorporated in the judgment, and such judgment may be modified as other judgments for divorce.

(3) If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. Such consent may not be withdrawn by a party without leave of the court after the court has commenced any proceeding, including the hearing of any motion or other matter pertaining thereto. The failure or refusal of either party to agree as to adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between the parties, or any portion of such issues, or the failure or refusal of any party to consent to permit the court to decide such issues, shall not be used as evidence, or in any manner, against such party. No divorce shall be granted pursuant to this subsection until all matters involving custody and maintenance of any child of that marriage and property rights between the parties raised by the pleadings have been either adjudicated by the court or agreed upon by the parties and found to be adequate and sufficient by the court and included in the judgment of divorce. Appeals from any orders and judgments rendered pursuant to this subsection may be had as in other cases in chancery court only insofar as such orders and judgments relate to issues that the parties consented to have decided by the court.

Miss. Code Ann. § 93-5-2(1),(2),(3).

[7] See *Dearman v. Dearman,* 811 So.2d 308 (Miss. Ct. App. 2001)*,* for a more complete discussion of the history of these statutes.

6

a divorce was required to prove that he or she deserved the divorce and that the other party was at fault. The court would then determine custody, property settlement and support issues. When the ID divorce statute was adopted in 1976, the parties to an ID divorce were required to agree in writing on **all** issues, including custody, property distribution and support, without court direction, prior to a divorce being granted. Although the ID divorce statute was seen by many as a major step forward in divorce law in Mississippi, the requirement that parties having "irreconcilable differences" must "agree" to the major questions of custody, property, and support, without the court's help, was seen as unworkable. After the adoption of the ID divorce statute, we explained its shortcomings:

> Today's decision and our recent decision in *Marble v. Marble*, 457 So.2d 1342 (Miss.1984), make apparent, however, that further improvements in our law are needed. As enlightened and desirable as was the enactment of the Irreconcilable Differences Act in 1976, the job has not yet been completed. Indeed, these cases reveal what I regard as a congenital defect in our Irreconcilable Differences Act--it facilitates, even encourages, financial blackmail.
> I speak here of the requirement in the law that, before a divorce may be granted on grounds of irreconcilable differences, the parties must have voluntarily negotiated and entered into an agreement respecting the custody and maintenance of children as well as all matters touching alimony and the settlement of their respective property rights.

*Gallaspy v. Gallaspy*, 459 So.2d 283, 286-87 (Miss. 1984). *See also Wilson v. Wilson*, 547 So.2d 803, 805 (Miss. 1989) ("However viable a theory of freedom of contract in other contexts, it is an oxymoron in divorce cases."). This Court in *Gallaspy* encouraged the Legislature to add a thirteenth ground, of irreconcilable differences, to the fault-based grounds for divorce under § 93-5-1, which would be treated the same as the other twelve, in that the court would determine custody, property settlement and support issues. *Gallaspy*, 459 So.2d at 288.

¶9.     In 1983, the Legislature adopted § 93-5-24, the joint custody statute, which delineated the types of joint custody available and to whom joint custody could be awarded.  The language of subsection (2) tracked the requirement that parties to an ID divorce were required to submit a written agreement pertaining to custody.

¶10.    In 1990, the Legislature finally added subsection (3)[8] to § 93-5-2, which allowed the parties to submit custody and support issues to the court for resolution.   To facilitate the court's involvement, the consent "must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that the parties understand that the decision of the court shall be a binding and lawful judgment. . . ."  Miss. Code Ann. § 93-5-2(3).

¶11.    In light of timing of the statutes and their modifications, it is reasonable to conclude that the "application of both parents" language was included in § 95-5-24(2) due to the prior existence of § 93-5-2, requiring a written agreement between parties.   Because § 93-5-2 now allows more flexibility with the inclusion of subsection (3), it follows that this flexibility is also to be recognized by § 93-5-24(2).   That is, the concept of joint application is defined by § 93-5-2, not § 93-5-24(2).

¶12.    The Court of Appeals erred by interpreting § 93-5-24(2) without reference to § 93-5-2, because the court undertook no analysis of possible alternate interpretations.   In *Morris*, the parents sought an irreconcilable differences divorce, but were unable to agree to child custody and support and therefore submitted this and other issues to the chancellor.   The chancellor

_____

[8] See footnote 6 for the full language of this subsection.

8

awarded joint custody.  On appeal, the Court of Appeals reversed.  The Court of Appeals' entire analysis of this issue was:

> In the present case the chancellor failed to follow the specific directive of Miss. Code Ann. § 93-5-24(2).  Under § 93-5-24(2) where a divorce is based upon the grounds of irreconcilable differences, both parents must agree to joint custody. Because we find that neither party agreed to nor requested joint custody, we are compelled to reverse this case and remand for further proceedings.

*Morris*, 758 So.2d at 1021.  Without taking into consideration the ID divorce statute, or the legislative and case law directives requiring that custody decisions must be made in the best interest of the child, the court did not properly view the intended meaning of § 93-5-24(2).  The Court of Appeals' interpretation requiring the parties to jointly request joint custody is contrary to the 1990 subsection (3) amendment to § 93-5-2.  It is logical and reasonable that "application of both parties" exists when both parties consent to allowing the court to determine custody. The fact that the parties request that the court determine which parent is to receive "primary custody" does not alter this.  The parties are allowing the court to determine what form of custody is in the best interest of the child.  If joint custody is determined to be in the best interest of the child using court-specified factors, i.e., the *Albright* factors, the parties should not be able to prohibit this by the wording of the consent.  It would be the same if the parties requested that the court determine which party will receive "all marital assets."  The chancellor has the responsibility to determine how to best distribute the assets according to court-specified factors (the *Ferguson* factors) and must not be bound by the wording of the consent to award all marital assets to one party.

¶13.  To be sure, unless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody.  This is for the chancellor to determine

9

as he or she is in the best position to evaluate the credibility, sincerity, capabilities and intentions of the parties. The chancellor in the present case determined that because the parents had been sharing joint legal and physical custody since their separation, on their own initiative, that there was a proven willingness from both parties to cooperate. And since she had determined that the child needed what both parents were giving and willing to give, it would be in the child's best interest to continue this way.

¶14. There is also a problem interpreting § 93-5-24(2) due to the definition of "joint custody" in Miss. Code Ann. § 93-5-24(5).[9] A chancellor could award joint legal custody to both parents, but award primary physical custody to one parent, and liberal visitation to another parent, and this would not be "joint custody" as defined by the statute, and would not trigger § 93-5-24(2). If the same legal and physical arrangement were labeled "joint custody," § 93-5-24(2) would apply. This anomaly was dealt with in *Dearman v. Dearman*, 811 So.2d 308 (Miss. Ct. App. 2001). In that case, the Court of Appeals affirmed the chancellor's grant of joint legal and joint

---

[9] This statute states in pertinent part:

(a) For the purposes of this section, "joint custody" means joint physical physical and legal custody. . . .

(c) For the purposes of this section, "joint physical custody" means that each of the parents shall have significant periods of physical custody. Joint physical custody shall be shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents. . . .

(e) For the purposes of this section, "joint legal custody" means that the parents or parties share the decision-making rights, the responsibilities and the authority relating to the health, education and welfare of a child. An award of joint legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and to confer with one another in the exercise of decision-making rights, responsibilities and authority.

Miss. Code Ann. § 93-5-24(5).

physical custody to parents who both sought sole custody after an ID divorce.[10]  As in the present case, the parents consented to the court making the decision concerning custody.  The Court of Appeals stated that, based on *Morris*,  joint custody could not be awarded, but then hinged its affirmance on the rationale that the court actually awarded primary custody to the father with liberal visitation to the mother, but mislabeled it as "joint custody."  The Legislature may desire to correct this anomaly.

¶15.    We hold that when parties consent in writing to the court's determination of custody, they are consenting and agreeing to that determination and this meets the statutory directive of "joint application" in § 93-5-24(2).  This is the only interpretation that conforms to the primary directive of § 93-5-24(1) that "custody shall be awarded as follows according to the **best interests of the child**." It is the chancellor who must determine what is in the best interest of the child, and it is the chancellor who determines the level of commitment parents have to sharing joint custody.

## CONCLUSION

¶16.    This issue is one of first impression for this Court.  It is clear that the courts and the Legislature look to the best interest of the child as the paramount concern in custody determinations.  Additionally, because the phrase "joint application" has not been defined, it is open to interpretation.  When parties to an ID divorce request the court to make a custody determination, it is this Court's interpretation that this is a joint application in keeping with section 93-5-24(2).  It is the chancellor's responsibility to ensure that the parents are capable of cooperating in a joint custody arrangement.

---

[10] In the initial divorce proceeding, the paternal grandparents were awarded custody.

11

¶17. For these reasons, we reverse the judgment of the Court of Appeals and affirm the trial court's judgment and finding that the chancellor may award joint custody in an ID divorce, when the parties request the court to determine custody.

¶18. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED; THE JUDGMENT OF THE ALCORN COUNTY CHANCERY COURT IS AFFIRMED.**

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**