ON WRIT OF CERTIORARI

PIERCE, Justice, for the Court:
¶ 1. Anthony Cuccia (“Tony”) separated from his wife, Julie Anne Cuccia (“Julie Anne”), after eleven years of marriage, on December 26, 2007. At some point near the end of the marriage, Julie Anne began allowing rottweiler and pitbull dogs to live in the home. Tony disagreed with Julie Anne’s decision, resulting in a dispute that led to Tony filing for divorce on January 31, 2008, in Desoto County Chancery Court, based on irreconcilable differences. On March 12, 2008, Tony filed an amended complaint for divorce, adding that he was entitled to a divorce on the grounds of habitual cruel and inhumane treatment. On March 17, 2008, Julie Anne filed an answer and counterclaim in which she denied being guilty of habitual cruel and inhumane treatment but admitted that irreconcilable differences existed, arguing in the alternative that she was entitled to a divorce on the grounds of habitual cruel and inhuman treatment. On April 15, 2009, Tony and Julie Anne consented to an irreconcilable-differences divorce, but left equitable distribution of property, child custody, and alimony for the chancery court to decide. After a trial on September 21, 2009, the chancery court issued its final divorce decree and order, granting custody to Julie Anne, dividing the marital estate, and awarding alimony. Tony appealed the divorce decree due to the nature of the award given to Julie Anne regarding child custody, alimony, and equitable distribution of marital property. On appeal, the Court of Appeals overturned several of the chancery court’s findings and remanded the issues for reexamination. As a result, Julie Anne petitioned this Court for certiorari, which is granted. Now this Court must review the findings of the Court of Appeals and the chancery court. Relevant facts will be discussed within each issue presented to this Court in Julie Anne’s petition for certiorari.
PROCEDURAL HISTORY
¶ 2. The Court of Appeals issued a ruling on June 14, 2011, affirming in part, reversing in part, rendering in part, and remanding in part. On the first issue and second issue, child custody and visitation, the Court of Appeals found that the chancery court properly had considered the Al- *1231 bright[1] factors, but the chancery court’s determinations were manifestly wrong.[2] Thus, the Court of Appeals reversed and rendered, granting joint legal and physical custody to Tony and Julie Anne.[3] However, the Court of Appeals remanded the issue to the chancery court, because the chancery court would be in a better position to assess each party’s division of time.[4] And, in regard to the children and the dogs that remained in Julie Anne’s home, the Court of Appeals ruled that the chancery court had erred by not issuing an injunction against Julie Anne, restricting the number and size of dogs she could have in her residence with the children.[5]
¶ 3. Next, the Court of Appeals considered equitable distribution of property. The Court of Appeals determined the chancery court was manifestly wrong in awarding Julie Anne half of Tony’s bonus check without considering the marital debt that had been satisfied from the bonus.[6] Additionally, the Court of Appeals considered whether the home Julie Anne had purchased post-separation should have been classified as marital property, and remanded the issue to the chancery court for reconsideration.[7] Moreover, although the Court of Appeals questioned whether a piece of unimproved property located in Tennessee could triple in value over the past eight years, it could not find manifest error with the chancery court’s decision.[8] But the Court of Appeals did find that the chancery court’s failure to consider the marital debt in its analysis was manifest error.[9]
¶ 4. Finally, the Court of Appeals ruled that the award of alimony to Julie Anne was manifest error.[10] The Court of Appeals stated that the chancery court did not expound upon the legal considerations for an award of alimony.[11] After weighing the amount awarded to Julie Anne and her income and expenses from her personal business against Tony’s decrease in salary and monthly obligations, the Court of Appeals reversed the chancery court’s judgment of alimony to Julie Anne and remanded for reconsideration by the chancery court.
¶ 5. In her petition for certiorari, Julie Anne contests the Court of Appeals’ findings with regard to the equitable distribution of property, child custody, and alimony. First, Julie Anne asserts that Tony’s bonus, at least the part earned while the two were together, was marital property and that Tony failed to show otherwise. Next, Julie Anne argues that her post-separation-purchased home is not marital property because it was purchased after entry of a temporary support order, which she asserts is the line of demarcation in determining whether assets are marital or separate. Also, Julie Anne claims that the *1232 chancery court did not err by disregarding marital debt in dividing the marital estate, stating that the evidence of marital debt was insignificant. In addition, Julie Anne contends that the Court of Appeals’ decision with regard to child custody was based on inaccurate facts and unsupported allegations about her home and the role of the parties in caring for the children, maintaining that the chancery court’s determination with regard to the Albright factors was correct. Finally, Julie Anne argues that the chancery court properly supported its findings with regard to alimony as outlined by Cheatham v. Cheatham, 537 So.2d 485 (Miss.1988), and that the Court of Appeals erred in reversing and remanding the chancery court’s award of alimony.
DISCUSSION
I. Whether the Court of Appeals erred in its determination regarding equitable distribution of property.
¶ 6. Julie Anne suggests that the Court of Appeals erred in three ways: 1) she argues that at least part of Tony’s bonus money was marital property and Tony failed to show otherwise; 2) she asserts that the chancery court properly classified her post-separation-purchased home as separate property; and 3) she contends that the chancery court was not obligated to consider marital debt in dividing the marital estate, and that, if it was, the marital debt was insignificant.
¶ 7. The hallmark case for equitable distribution of property in Mississippi is Ferguson v. Ferguson, 639 So.2d 921, 925 (Miss.1994). Accordingly, “this Court has abandoned the title theory method of distribution of marital assets and evolved into an equitable distribution system.”[12] But in reviewing property distribution and division in divorce cases, this Court applies a limited standard of review.[13] Therefore, this Court will not substitute its own judgment for that of the chancery court, and the findings of the chancery court will be overturned only when those findings are manifestly wrong or clearly erroneous, or an erroneous legal standard was applied.[14]
¶ 8. As far as equitable distribution of property is concerned, “equitable division of, property does not mean an equal division of property.”[15] Marital property has been classified by this Court “as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor.”[16] Generally, for the purposes of accumulating marital property, the time period runs from the date of marriage until the final judgment of divorce.[17] But this Court has carved out an exception when an order for separate *1233 maintenance has been entered.[18] This Court also recognized in Wheat that a temporary support order may serve as a line of demarcation in determining whether property is marital or separate.[19]
¶ 9. In the case before us, a separate maintenance order was not entered, but a temporary support order was issued on May 6, 2008, and filed on May 9, 2008. In reviewing the chancery court’s order, we do not find that he set out the specific date as the line of demarcation in classifying marital versus nonmarital property. He must do so.[20] After determining the line of demarcation, the chancery court must then determine which assets and liabilities are marital and nonmarital in accordance with Ferguson and Hemsley. Then, he must divide the marital estate equitably.
A. Tony’s FedEx Bonus
¶ 10. At the time of the divorce, Tony was the managing director of information security for Federal Express (“FedEx”). Tony received a bonus check from FedEx in July 2008 in the amount of $43,460 for the period of June 1, 2007, through May 31, 2008. Tony provided evidence that the bonus he received was actually a combination of two bonuses — an annual long-term bonus and an annual incentive bonus. The testimony at trial explained that the annual long-term bonus was computed from FedEx’s performance over a three-year period, whereas the annual incentive bonus was based on both Tony’s individual performance and FedEx’s performance. Accordingly, the vast majority of this bonus appears to have been “accumulated during the marriage” and seems to have been based in part on Tony’s individual job performance during the marriage. Therefore, the bonus Tony received could be classified as marital property, subject to equitable distribution.[21]
¶ 11. Reversal is warranted in this instance because we are unable to determine from the chancery court’s order how much of Tony’s bonus is subject to equitable distribution. Not only did the chancery court fail to set forth the line of demarcation in classifying marital versus nonmarital property, it failed to take into consideration the amount of Tony’s bonus contributed to the marital debt shown in this case.
¶ 12. Marital debt lies within the factors set forth in Ferguson, as it may be defined as an “economic consequence” or as “any other factor which in equity should be considered.”[22] Both the Court of Appeals and this Court have considered marital debt as a factor when evaluating how property shall be divided in applying Ferguson and Hemsley.[23] Julie Anne contends that the marital debt in this case was *1234 insignificant, and therefore, the chancery court was correct in not considering it. But, as the Court of Appeals noted, the marital debt in this case is not insignificant:
The record reflects that the parties accrued marital debt in various forms, including but not limited to credit-card debt, mortgage debt, and amounts owed for their children’s tuition payments. The debt in question was enough to warrant Tony’s historical practice of using his bonus money, most recently an amount in excess of $40,000, to pay off marital debt each year.[24]
¶ 13. We agree with the Court of Appeals that the chancery court should have considered marital debt in equitably distributing the marital estate. As Ferguson directs, “[pjroperty division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division.”[25] Because “we must recognize that married parties usually create estates together,”[26] marital debt cannot be ignored.
¶ 14. The chancery court found that Tony’s bonus check was marital property, but it did not consider the amount Tony had paid to satisfy marital debt. This was error.
¶ 15. Accordingly, we reverse the chancery court on this issue and remand with instructions to the chancery court to evaluate the amount of Tony’s FedEx bonus in conjunction with the line of demarcation, and to determine the amount of it that was used to satisfy marital debt. Then, from whatever remains, an equitable-distribution determination should be made.
B. Julie Anne’s Post-Separation-Purchased Home
¶ 16. After the marital residence was sold, and after the temporary support order was entered, Julie Anne purchased a home. The Court of Appeals found that the
chancery court’s classification of Tony’s bonus money paid toward marital debt as marital property and Julie Anne’s residence obtained by and paid for in large part by Tony’s temporary support payments as separate property to be conflicting. If the payment of marital debt using funds acquired outside of the marriage results in the funds becoming commingled and therefore “marital,” should not the payment for property acquired outside of the marriage using marital funds end in the same result? At the very least, we see fit to deduct payments made by Tony with his bonus money for the reduction of marital debt and his payments of temporary support from any alleged deficit suffered by Julie Anne due to the parties^] purported monetary inequity.[27]
Regardless of whatever conflict the Court of Appeals found, we find that the chancery court incorrectly divided the marital estate without first determining the date of demarcation and without considering *1235 marital debt. Accordingly, the chancery court must address this asset on remand in conjunction with both factors.
C. The Tennessee Acreage
¶ 17. Tony, Julie Anne, and Tony’s parents were deeded 100 acres of undeveloped woodland with joint ownership and rights of survivorship. The acreage was purchased for approximately $52,500 in 2001, and no improvements have been made on the land since that time. The chancery court ruled that the acreage was marital property, and the Court of Appeals agreed.
¶ 18. On certiorari, Julie Anne did not contest the Court of Appeals’ determination regarding the Tennessee acreage. Nevertheless, because the chancery court incorrectly divided the marital estate (for the reasons previously mentioned), the chancery court must also address this asset on remand.
II. Whether the Court of Appeals erred in awarding joint legal and physical custody of the children to Tony and Julie Anne.
¶ 19. The Court of Appeals reversed and rendered the chancery court’s custody determination, having found that the chancery court committed reversible error in awarding Julie Anne sole legal and physical custody of the children. The Court of Appeals determined that the chancery court had properly considered the factors set forth in Albright, but found that several of the chancery court’s conclusions and its overall decision were manifestly wrong. However, Julie Anne contends that the Court of Appeals’ decision with regard to child custody is based on inaccurate facts and unsupported allegations about her home and the role of the parties in caring for the children, maintaining that the chancery court’s determination with regard to the Albright factors was correct.
¶ 20. The chancery court found that most of the Albright factors favored neither party. Specifically, the chancery court found that “continuity of care,” “best parenting skills,” and “willingness to provide primary childcare” favored Julie Anne. However, the Court of Appeals determined that “continuity of care” and “best parenting skills” favored neither party, and also decided that Tony had exhibited a “willingness” to care for his children. After review of the evidence and testimony, we agree with the Court of Appeals that “best parenting skills” and “willingness to provide primary childcare” favored neither party. But we are unable to find that the chancery court erred in its determination that “continuity of care” favored Julie Anne.
¶ 21. Ultimately, we find that the Court of Appeals erred in reversing and rendering the chancery court’s custody determination. In Crider v. Crider, a husband and wife agreed to an irreconcilable-differences divorce and submitted the issues of child custody, property settlement, and support to the determination of the chancery court.[28] There, the chancery court awarded joint custody, and this Court stated that “unless the parents are capable of sharing joint custody cooperatively, it is incumbent upon the chancery court not to award joint custody.”[29] This Court further stated that the custody determination is one to be made by the chancery court, “as he or she is in the best *1236 position to evaluate the credibility, sincerity, capabilities and intentions of the parties.”[30]
¶ 22. The chancery court noted that this was not a case in which joint custody was appropriate, because Tony and Julie Anne could not work together to make joint custody feasible. The chancery court was in the best position to make that determination. “Indeed, if the parents cannot agree on who should have primary custody of the children, it is probably the better course for the chancery court to make that decision for them[,] reserving joint custody for parents who are willing to work together to make joint custody feasible.” [31] When substantial animosity exists, a joint custody arrangement may not be in the best interests of the children.[32]
¶ 23. That said, we agree with the Court of Appeals that the chancery court erred by not issuing an injunction against Julie Anne, restricting the number and size of any dogs she may have in her residence with the children. The chancery court’s order is devoid of any consideration regarding the children being around the dogs that Julie Anne sometimes has in her home through her dog-rescue operation. Accordingly, we agree that the chancery court must revisit this issue and make findings that are in the best interest of the children.
III. Whether the Court of Appeals erred in reversing the chancery court’s award of rehabilitative alimony.
¶ 24. The chancery court determined that there was a great disparity in the incomes of Tony and Julie Anne, applying the factors from Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), and ordered rehabilitative alimony under the guidelines of Hubbard v. Hubbard, 656 So.2d 124 (Miss.1995). The Court of Appeals found the award of rehabilitative alimony to be manifestly erroneous because of the amount already awarded to Julie Anne, her personal income, Tony’s monthly obligations, and Tony’s decrease in salary.
¶ 25. “Rehabilitative periodic alimony is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim.”[33] As such, rehabilitative alimony is not to be considered by the chancery court as an equalizer between the parties.[34] And here, the chancery court went through the relevant factors when considering alimony and noted that there was a great disparity between the parties’ incomes. After reviewing those factors, the chancery court stated that the award of rehabilitative alimony was to allow Julie Anne to finish any educational requirements she might have. Julie Anne testified that she operated an expensive nonprofit dog-rescue operation and that she operated a dog-training academy. However, to meet her needs and the needs of her children, she testified that she wanted to attend nursing school. Therefore, it is clear that Julie Anne was seeking a means to become self-supporting. As such, we find no error in the chancery court’s decision to award Julie Anne rehabilitative alimony to return to school.
*1237 ¶ 26. “[A]limony and equitable distribution are distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede.” [35] Because of this Court’s decision regarding the equitable distribution of marital property and marital debt in this case, alimony should be revisited by the chancery court on remand.
CONCLUSION
¶ 27. The judgment of the Court of Appeals is affirmed in part and reversed in part. On remand, the chancery court is instructed to determine the demarcation date for dividing the marital property, consider marital debt in that division, consider whether alimony is appropriate after making that division, reevaluate the custody matter, and craft an appropriate custody arrangement with the best interest of the children in mind.
¶ 28. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS REVERSED, AND THE CASE IS REMANDED.
WALLER, C.J., CARLSON, P.J., RANDOLPH AND LAMAR, JJ„ CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., AND CHANDLER, J. KING, J., NOT PARTICIPATING.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983).

. Cuccia v. Cuccia, 91 So.3d 27, 2011 WL 2315266, 32-36 (Miss.Ct.App.2011).

. Id. at 35-36.

. Id.

. Id.

. Id. at 36-38.

. Id.

. Id. at 37-39.

. Id. at 37-38.

. Id. at 38-40.

. Id.

. Ferguson v. Ferguson, 639 So.2d 921, 927 (Miss.1994).

. Bowen v. Bowen, 982 So.2d 385, 393 (Miss. 2008) (citing Owen v. Owen, 928 So.2d 156, 160 (Miss.2006)).

. Id. at 394.

. Wheat v. Wheat, 37 So.3d 632, 641 (Miss. 2010).

. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994).

. See Wheat, 37 So.3d at 637-38.

. Id. (citing Godwin v. Godwin, 758 So.2d 384 (Miss. 1999)).

. Id.

. See Godwin v. Godwin, 758 So.2d 384, 386 (Miss. 1999).

. Hemsley, 639 So.2d at 915.

. Ferguson, 639 So.2d at 928.

. See Wheat v. Wheat, 37 So.3d 632 (Miss. 2010); Selman v. Selman, 722 So.2d 547, 553 (Miss. 1998) ("The chancellor also failed to make express findings of fact or conclusions of law in regard to the marital debt.”); Jones v. Jones, 72 So.3d 561, 564 (Miss.Ct.App. 2011); Shoffner v. Shoffner, 909 So.2d 1245, 1251 (Miss.Ct.App.2005) ("The courts in this state have consistently held that expenses incurred for the family, or due to the actions of a family member, are marital debt and should be treated as such upon dissolution of the marriage.”); McLaurin v. McLaurin, 853 So.2d 1279, 1286 (Miss.Ct.App.2003) ("We find this also includes marital debt.”).

. Cuccia, 91 So.3d at 37.

. Ferguson, 639 So.2d at 929 ("Property division should be based upon a determination of fair market value of the assets, and these valuations should be the initial step before determining division.”).

. Hemsley, 639 So.2d at 914.

. Cuccia, 91 So.3d at 37-38.

. Crider v. Crider, 904 So.2d 142, 143 (Miss. 2005).

. Id. at 147.

. Crider, 904 So.2d at 147.

. Waller v. Waller, 754 So.2d 1181, 1184 (Miss.2000).

. See Rutledge v. Rutledge, 487 So.2d 218, 220 (Miss. 1986).

.Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995).

.Id.

. Ferguson, 639 So.2d at 929.