KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART: ¶36. .1 agree that the chancellor was fully empowered under our statutes to award joint custody of Adriana Rose Darby (Addie), to her paternal grandmother, Monica Darby, and to . her maternal great-grandparents, Harold and Karron Combs. But I would hold that, when a chancellor orders third parties from different households to share.custody of a child, with all the attendant duties of cooperation that this endeavor entails, the chancellor reversibly errs by failing-to make an express finding that the parties can cooperate willingly in the rearing of that child. I would find that Addie’s best interest requires that-this Court reverse and remand for the chancellor to make an express'determination of whether Monica Darby and the Combses, who .have displayed little or no predilection for cooperation in the past, are capable of willingly cooperating as joint custodians of Addie. ¶ 37. In Rutledge v. Rutledge, this Court held that: The essence of joint custody is that both parents share responsibility and authority with respect to the children. This involves parental consultation and agreement on all major decisions affecting the children. The decision making, process thus approximates that of an intact nuclear family. Parents with joint custody make joint decisions on all matters having a significant impact on. their children’s lives. Rutledge v. Rutledge, 487 So.2d 218, 219 (Miss. 1986). “[T]he cardinal criterion'for an award of joint custody is ,.. mutual ability to cooperate in reaching shared decisions in matters affecting the child’s welfare.” Waller v. Waller, 754 So.2d 1181, 1184 n.1 (Miss. 2000). “Cooperation between the parents is paramount even in jurisdictions where there is a presumption that joint custody is in the best interest of the child.” Id. This Court has expressed that joint custody should be ¡awarded only when the purported joint custodians “are willing to work together to make joint custody feasible.” Id. at 1184. In Crider v. Crider, we clearly announced that “unless the parents are 'capable' of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody.” Crider v. Crider, 904 So.2d 142, 147 (Miss. 2005). ¶38. The -import of these decisions is that, if the chancellor believes that the purported joint custodians cannot cooperate willingly, then joint custody is not in the best interest of the child. And the .chancellor’s duty to consider the ability of purported joint custodians to cooperate willingly fits smoothly within the Albright framework. See Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983) (in making a custody determination,, the chancellor must make findings on factors including the parties’ willingness and capacity to' provide primary child care), ¶39. Further, Crider clarified that determining. the parties’ ability to cooperate in sharing joint custody is a matter within the chancellor’s sound discretion. We found that the chancellor “is in the best position to evaluate the credibility, sincerity, capabilities and intentions .of the parties” regarding their ability to cooperate in the exercise of joint custody. Crider, 904 So.2d at 147. “It is the chancellor’s responsibility to ensure that the parents [or parties] are capable, of cooperating in a joint custody arrangement.” Id. at 148. ¶ 40. It is true that the chancellor carefully considered' the Albright factors to determine the custodial arrangement that would be in Addie’s best interest. In doing so, the chancellor weighed the evidence after hearing the trial testimony, observing the demeanor of the witnesses, and reviewing the exhibits. The chancellor explained -that the evidence of violence in Mrs. Darby’s.'home, coupled with Andrew Darby’s mental condition and his expected periodic presence in her home, caused him to reject the GAL’s recommendation that Mrs. Darby have sole custody. However, in his orders the. chancellor did not address explicitly the fact that the award of joint custody.will require Mrs. Darby and the Combses to cooperate willingly in making parenting decisions in Addie s best interest. ¶ 41. The majority speculates, and ultimately decides, that the chancellor’s award of joint custody means that he implicitly found that the parties could cooperate. I reject this approach. A child custody arrangement is one of the most consequential and weighty decisions a chancellor ever makes. It is a decision of no small import when a chancellor orders third parties, with no history of cooperation in any matter whatsoever, to share physical and legal custody of a minor child, an undertaking that necessitates countless coordinated exercises of responsibility, authority, and significant decision making. This Court should not imply or surmise, in such circumstances, that such a finding was made. I would hold that an express determination of whether the parties can cooperate willingly in exercising joint custody is necessary when joint custody is awarded to third parties who are members of different households. Because the chancellor made no such express determination, I would reverse the award of joint custody and remand for fact findings on whether Monica Darby and the Combses are capable of and committed to genuine cooperation in the rearing of Addie, and whether they are willing and able to exercise such cooperation. The chancellor should render a new custody determination under the factors from Albright if he finds that the parties are incapable of, or unlikely to engage in, willing cooperation. KING, J„ JOINS THIS OPINION.