CARLTON, J.,
for the Court:
¶ 1. The Warren County Chancery Court granted Dustin and Melanie Keyes an irreconcilable-differences divorce. Me *389 lanie appeals the chancellor’s decision to award the parties joint legal and physical custody of their two minor children. She argues that the chancellor erred by awarding joint custody because: (1) the chancellor failed to determine whether the parties could cooperate in sharing joint custody; and (2) the chancellor violated the chancery court maxim that “[ejquity delights to do complete justice and not by halves.”[1] Finding no error, we affirm.
FACTS
¶ 2. Dustin and Melanie were married on December 9, 2006. The couple had two minor children during the marriage: a daughter, Piper, and a son, Wade. At the time of the trial in 2012, Piper was three years old, and Wade was eleven months old. The parties separated in March 2012, and on April 18, 2012, they filed a joint bill for divorce on the ground of irreconcilable differences. The parties had not yet entered into a property-settlement agreement but stated that they would attempt to enter into one. On June 11, 2012, the parties filed a consent for the chancellor to grant an irreconcilable-differences divorce and to allow the chancellor to decide the following issues upon which the parties could not agree: (1) alimony; (2) physical and legal custody of the parties’ children, visitation rights, and the amount of child support; (3) the award of the dependency exemption; (4) the division of any marital property; and (5) any other matters requiring equitable relief that might arise. Melanie requested that the chancellor grant her primary physical custody of the children, and Dustin requested joint custody-
¶ 3. The chancellor held three hearings on the parties’ joint bill for divorce. On December 19, 2012, the chancellor entered a memorandum opinion and final judgment granting the parties an irreconcilable-differences divorce. After considering the testimony and applicable law, the chancellor entered her findings of fact and conclusions of law. The chancellor conducted a thorough analysis of the factors set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). After weighing the Al-bright factors, the chancellor awarded the parties joint legal and physical custody because the factors supported both parents equally. The following analysis reflects the chancellor’s determination that the award of joint legal and physical custody was in the best interest of the children.
¶ 4. Although the parties’ children were under the age of four at the time of the. trial, the chancellor noted that the presumption related to the tender-years doctrine had weakened in recent years.[2] The chancellor stated that the “tender[-]years doctrine is weakened further [in the present case] by testimony regarding how Wade is bottle-fed both formula and milk.” Finding that the testimony showed that both parents possessed the capacity to care for the children, the chancellor determined that the children’s ages weighed in favor of both parents.
¶ 5. With regard to the health and sex of each child, the chancellor found that Wade had previously suffered some illnesses, such as pneumonia and respiratory-syncytial virus, but that these were no longer issues. Disputed testimony was offered as to whether Piper • continued to suffer from asthma, but the chancellor *390 found that the asthma no longer appeared to be an issue. Finding that both children were relatively healthy, the chancellor found that this factor weighed in favor of each parent equally. As to continuity of care, the chancellor found that Dustin and Melanie both spent significant time with their children following their separation. Dustin’s mother and two sisters testified that Dustin was a good and capable parent. Melanie testified that Dustin did not help her with the children and that he did not help her with cooking, cleaning, feeding the children, or changing dirty diapers. Dustin, however, testified that he cooked meals and fed and bathed the children. He further testified that he got the children out of bed in the mornings and ready for daycare and then picked them up from daycare. After considering all the testimony, the chancellor found this factor also weighed equally in favor of both parties.
¶ 6. The chancellor next considered the parties’ parenting skills and their capacity to provide primary child care. The chancellor found that Dustin paid for the children’s daycare and that both parents had flexible job hours and family members living nearby. Dustin testified that Melanie was a good mother, and Melanie testified that Dustin was a good father when “it suited him.” Melanie also testified that she had no problem with Dustin’s parenting skills. Based on the testimony, the chancellor found that both parents had the willingness and capacity needed to provide primary care, and he concluded that this factor also weighed equally in favor of both parties. The chancellor also found the following: (1) the parties each worked full-time jobs but had flexible hours when needed; (2) insufficient evidence existed to suggest that the parties were not in good physical and mental health; (3) the parties both had strong emotional ties to their children; and (4) the children had strong emotional ties with each parent. Therefore, the chancellor found that the factors regarding employment of the parents and the responsibilities of that employment, physical and mental health and age of the parents, and emotional ties of the parent and child all weighed equally in favor of both parties.
¶ 7. As to the parties’ moral fitness, the chancellor found that this factor also weighed equally in favor of both parties. Melanie alleged that Dustin had engaged in an affair with Megan French, an employee at the children’s daycare and a friend of Dustin’s family. Dustin and Megan, however, denied that they had ever had a romantic relationship. Megan testified that she had known Dustin and his sisters for years and that she considered Dustin to be like a brother. Dustin also testified that Megan was like a sibling to him. He stated that both his daughter and his sister’s child referred to Megan as “Aunt Megan,” and Megan testified that other children at the daycare called her “Aunt Megan.” Based on the testimony, the chancellor found insufficient evidence to corroborate Melanie’s allegation of an affair.
¶ 8. The chancellor found that the factors regarding the children’s home, school, and community record and the stability of the home environment weighed equally in favor of both parties. The chancellor noted that both parents maintained steady employment and resided in or near Vicksburg, Mississippi, with Dustin residing in Hinds County, and Melanie residing in Warren County. Furthermore, family members of both parties lived nearby, were engaged in the children’s lives, and could provide support as needed. Because the children were “not of the age sufficient to express a preference by law,” the chancellor found this particular factor inapplicable.
*391 ¶ 9. The chancellor determined that it was in the children’s best interest to award Dustin and Melanie joint legal and physical custody. The chancellor’s judgment stated that the children would alternate weeks with each parent and that the parents should spend alternating weekends with the children. The chancellor also ordered the parties to alternate certain specified holidays and to equally divide the Christmas holiday and summer vacation using the Vicksburg Warren School District schedule until Piper began kindergarten. Once Piper began kindergarten, the chancellor ordered the parties to use the school schedule observed by the school system in which Piper was enrolled to equally divide the Christmas holiday and summer vacation. In the event that the parties could not agree on an equal division of time, the chancellor provided an alternate holiday-visitation schedule.
¶ 10. Melanie filed a motion for reconsideration, asking the chancellor to reconsider her memorandum opinion and final judgment. Melanie also asked that the chancellor amend her judgment and grant Melanie sole physical custody of the parties’ children. In a final judgment entered on December 27, 2012, the chancellor denied Melanie’s motion for reconsideration. Aggrieved by the chancellor’s judgment, Melanie appeals.
STANDARD OF REVIEW
¶ 11. “This Court’s standard of review in domestic relations matters is extremely limited.” Phillips v. Phillips, 45 So.3d 684, 692 (¶ 23) (Miss.Ct.App.2010). We will not disturb a chancellor’s findings unless the findings were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Id. Where substantial evidence exists in the record to support the chancellor’s findings of fact, we will not reverse her decision. Id.
DISCUSSION
I. Whether the chancellor erred by failing to determine if the parties could cooperate in sharing joint custody.
¶ 12. Melanie argues on appeal that the chancellor erred by awarding the parties joint legal and physical custody of their two minor children. In her first argument, she contends that evidence submitted at trial revealed that she and Dustin are unable to cooperate. Melanie asserts that the parties’ inability to cooperate overcomes the presumption that joint custody is in the minor children’s best interest. Melanie states that “[t]he chancellor cited the applicable standard found in Cri-der v. Crider, 904 So.2d 142 (Miss.2005), to determine if joint custody could properly be awarded in this case.” She agrees that the chancellor correctly determined that the case fit the “application of both parents” requirement of Mississippi Code Annotated section 93-5-24(2) (Rev.2013), as clarified by the Mississippi Supreme Court in Crider. However, Melanie argues that the chancellor failed to then “make a determination that the parties could cooperate, as also required by Crider.”
¶ 13. Section 93-5-24(2) provides that in an irreconcilable-differences divorce the chancellor may, at her discretion, award joint custody “upon application of both parents.” In Crider, the parties filed a written consent to an irreconcilable-differences divorce and asked the chancellor to decide the issues of primary custody, property settlement, and support. Crider, 904 So.2d at 143 (¶ 3). The supreme court held “that when parties consent in writing to the court’s determination of custody, they are consenting and agreeing to that determination.” Id. at 148 (¶ 15). The supreme court further stated:
*392 It is logical and reasonable that “application of both parties” exists when both parties consent to allowing the court to determine custody. The fact that the parties request that the court determine which parent is to receive “primary custody” does not alter this. The parties are allowing the court to determine what form of custody is in the best interest of the child. If joint custody is determined to be in the best interest of the child using court-specified factors, i.e., the Al-bright factors, the parties should not be able to prohibit this by the wording of the consent.... To be sure, unless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody. This is for the chancellor to determine as he or she is in the best position to evaluate the credibility, sincerity, eapa-bilities[,] and intentions of the parties.
Id. at 147 (¶¶ 12-13). “The Crider court held that it is logical that when both parties consent for the court to determine custody, they fulfill the ‘application of both parents’ requirement of section 93-5-24(2).” Phillips, 45 So.3d at 695 (¶ 33) (citation omitted).
¶ 14. In the present case, the parties do not dispute that they both consented to the chancellor’s determination of custody and that the “application of both parents” requirement discussed in Crider was met. Therefore, we turn our focus to whether the chancellor erred in awarding joint custody because of the parents’ inability to “shar[e] joint custody cooperatively.” Crider, 904 So.2d at 147 (¶ 13). The supreme court has concluded that section 93-5-24(2) “should be interpreted to allow the chancellor to award joint custody in an irreconcilable[-]differences divorce if it is in the best interest of the child.” Phillips, 45 So.3d at 695 (¶ 33) (citing Crider, 904 So.2d at 148 (¶ 16)).
¶ 15. As provided in Mississippi Code Annotated section 93-5-24(5) (Rev.2013), “[a]n award of joint physical and legal custody obligates the parties to exchange information concerning the health, education[,] and welfare of the minor child[ren], and unless allocated, apportioned[,] or decreed, the parents ... shall confer with one another in the exercise of decision-making rights, responsibilities^] and authority.” Melanie asserts that such an award of joint custody will not work in this case because the parties are unable to cooperate with each other. She also argues that the record contains numerous examples of the parties’ inability to cooperate. According to her brief, the parties have already failed to communicate effectively about certain health issues relating to the children, what kind of formula Wade should take, whether the children should be on Dustin’s employer-provided insurance or should remain on Medicare, and which school the children should attend. As previously discussed, Dustin lives in Hinds County while Melanie lives in Warren County, and Melanie’s argument implies that any attempt to share joint custody will further be negatively affected because the parties reside in different counties.
¶ 16. The chancellor was in the best position to evaluate the parties’ ability to cooperate. See Crider, 904 So.2d at 147 (¶ 13); Phillips, 45 So.3d at 695 (¶34). After reviewing the record and applicable case law, we conclude that the chancellor did not commit manifest error by awarding the parties joint legal and physical custody. The parties consented to allow the chancellor to determine what form of custody would be in the minor children’s best interest, and both parties understood that joint custody was a possible outcome.
¶ 17. In her memorandum opinion and final judgment, the chancellor noted *393 that “[i]n child-custody cases, the polestar consideration is always the best interest and welfare of the child.” See Reed v. Fair, 56 So.3d 577, 582 (¶ 18) (Miss.Ct.App.2010) (quoting Albright, 437 So.2d at 1005). After analyzing the Albright factors, the chancellor again emphasized the importance of the minor children’s welfare, stating that her paramount concern in this case remained the best interest of the two minor children. In light of her findings, the chancellor determined that it would be in the best interest of the minor children to award the parties joint legal and physical custody. The chancellor’s decision is supported by facts from the record, and she possessed the discretion to render this custody award since both parties consented to submit the issue of child custody to her determination.[3] Therefore, this issue lacks merit.
II. Whether the chancellor erred by violating the chancery court maxim that “[ejquity delights to do complete justice, and not by halves.”
¶ 18. Melanie next argues that the award of joint custody essentially ensures future litigation; therefore, the chancellor violated the maxim that “[ejquity delights to do complete justice, and not by halves.” Melanie asserts that future litigation is likely because the chancellor failed to determine in which county the children should reside or where they should reside once they begin kindergarten. Melanie and Dustin reside in different counties, and Melanie contends that the children will be put “in the unenviable position of shifting back and forth from home to home during the school year.”
¶ 19. In support of her argument, Melanie relies on this Court’s decision in Daniel v. Daniel, 770 So.2d 562 (Miss.Ct.App.2000). The chancellor in Daniel awarded both parents joint legal custody of their minor child, with custody alternating every two weeks. Id. at 563 (¶ 2). This arrangement was to continue until the child turned five and entered kindergarten, at which time the father would receive physical custody. Id. In affirming the chancellor’s determination of the custody arrangement, we stated:
We are aware of the fact that a practice of constantly alternating a child back and forth to each parent is not a habit that should be encouraged. The Mississippi Supreme Court has spoken on this issue on more than one occasion, ruling that it is not in the best interest of a small child to be shifted from parent to parent. However, in this case, we are mindful that the child is nearing the age of five[-]year[-]old kindergarten and has been subjected to the rotating custody order since the chancellor’s judgment was handed down on December 15,1998. We therefore can see no reason why what has become the child’s regular routine should be interrupted. Nonetheless, we agree with the chancellor that at such time as the child begins kindergarten, it will be necessary for the child to maintain the stability that is crucial at the beginning stages of her education.
Id. at 567 (¶ 15) (internal citations and quotation marks omitted).
¶ 20. In the present case, Melanie argues that the parties’ two minor children need the same stability given to the minor child in Daniel. She asserts that the parties’ children should reside with her in Warren County, where they currently attend daycare. In light of the Court’s deci *394 sion in Daniel, and to provide the parties’ children with the stability that is crucial at the beginning stages of education, Melanie asks that the case be remanded with instructions for the chancellor to determine which parent should be the primary physical custodian.
¶ 21. As previously discussed, the decision to award the parties joint legal and physical custody was within the chancellor’s discretion since the parties agreed to submit this issue to her for determination.[4] Bearing in mind our limited scope of review on appeal, we find that the chancellor did not commit manifest error in awarding joint custody.[5] Therefore, this issue also lacks merit.
¶ 22. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. See James W. Shelson, Mississippi Chancery Practice § 2:20 (2013).

. See Price v. McBeath, 989 So.2d 444, 454 (¶ 39) (Miss.Ct.App.2008) ("The tender[-]years doctrine has been weakened in recent years, but there is still a presumption that a mother is generally better suited to raise a young child.”).

. See Crider, 904 So.2d at 148 (¶ 15); Phillips, 45 So.3d at 692 (¶ 23); Miss.Code Ann. § 93-5-24(2).

. See Crider, 904 So.2d at 148 (¶ 15); Phillips, 45 So.3d at 695 (¶ 33); Miss.Code Ann. § 93-5-24(2).

. See Phillips, 45 So.3d at 692 (¶ 23).