# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00395-COA

**ALI BLACKLEDGE JENKINS**                                                          **APPELLANT**

**v.**

**JASON BRETT JENKINS**                                                                **APPELLEE**

DATE OF JUDGMENT:                01/23/2024
TRIAL JUDGE:                     HON. BILLIE J. GRAHAM
COURT FROM WHICH APPEALED:       JONES COUNTY CHANCERY COURT,
                                 SECOND JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         RISHER GRANTHAM CAVES
                                 TERRY L. CAVES
ATTORNEY FOR APPELLEE:           SAMUEL CHRISTOPHER FARRIS
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
DISPOSITION:                     AFFIRMED - 02/17/2026
MOTION FOR REHEARING FILED:

**EN BANC.**

**EMFINGER, J., FOR THE COURT:**

¶1.     The Jones County Chancery Court granted Ali and Jason Jenkins an irreconcilable-differences divorce and awarded the parties joint legal and physical custody of their minor daughter.  Aggrieved by the chancellor's decision, Ali now appeals, asserting the following assignments of error: (1) the chancellor failed to address all relevant *Albright* factors[1] in making her custody determination; (2) the chancellor erred in awarding joint custody; (3) the chancellor erred in equitably dividing and distributing the marital property; (4) the chancellor abused her discretion in failing to award alimony to Ali; and (5) the

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1004-05 (Miss. 1983).

chancellor abused her discretion in denying Ali's request for attorney's fees.

**FACTS**

¶2.     Jason and Ali were married on May 28, 2016.  The couple had one minor child: a daughter, Mia,[2] who was born in 2019.  The parties separated in December 2022 and eventually filed a joint complaint for divorce on the ground of irreconcilable differences.

¶3.     In August 2023, the parties filed a consent requesting that the chancellor grant an irreconcilable-differences divorce and decide issues upon which the parties could not agree, including: (1) physical and legal custody of the parties' child and the amount of child support; (2) the division of any marital property; (3) alimony; and (4) attorney's fees.  Ali requested sole physical custody of Mia with liberal visitation for Jason, and Jason requested that the parties share joint legal and physical custody.

¶4.     At a trial on the matter, the chancellor heard testimony from the parties and several witnesses, including Ali's parents, Bud and Rochelle Blackledge; Jason's parents, Randy and Becky Jenkins; Jason's sister, Paige Jenkins; and Jason's grandmother, Sheila Watkins.

¶5.     The testimony at trial reflects that during their marriage, Ali and Jason lived in Jones County.  The parties built a house on land gifted to them by Ali's parents.  The marital home is located approximately one hundred yards from Ali's parents' house.

¶6.     Ali has a master's degree in secondary education, and at the time of trial, she worked as an inclusion teacher in the Jones County School District.  At the time of trial, Jason was employed as a territory sales manager for Smitty Supply, Inc. out of Roseland, Louisiana.

---

[2] For privacy purposes, we have changed the minor child's name.

2

¶7.    Ali testified that as a child, she developed a brain tumor, which affected her pituitary gland.  Ultimately, Ali had to have her pituitary gland removed, which necessitated her to regularly take several medications, including hydrocortisone, to compensate for her body's inability to produce its own adrenaline. She also took medication to treat her migraines.  Due to her condition, Ali is unable to drive.  Ali's father drives Ali and Mia to school in the morning, and Ali's mother picks them up in the afternoon.

¶8.    Text messages between Ali's mother, Rochelle, and Jason were entered into evidence at trial.  The text messages showed that Rochelle regularly contacted Jason for the purpose of checking on Ali.  Rochelle also regularly asked Jason to prompt Ali to take her medication and get out of bed on time in the morning.  The text messages established that it is difficult to get Ali to take her medication, for her to stay awake, and for her to wake up.  For this reason, Jason testified that he was the parent primarily responsible for Mia's day-to-day care.

¶9.    The chancellor also heard testimony regarding Jason's mental health, including testimony from witnesses who observed Jason get into arguments with Ali on two different occasions.  At trial, Jason claimed that the arguments were actually panic attacks.  Jason testified that at Ali's encouragement, he attempted to seek treatment for his anxiety and obtained a referral to a mental health clinic.  However, Jason admitted that after requesting the paperwork required to be accepted into the program and following up a few months later, he never received anything from the clinic.  Jason testified that he copes with his anxiety on his own without treatment.

¶10.    Jason admitted that in December 2022, he was arrested for soliciting a prostitute.  The

3

parties testified that Ali's health condition made sexual intercourse painful for her, and, as a result, the parties were rarely sexually intimate. Jason indicated that he sought out a prostitute due to the parties' intimacy issues. When Ali learned about Jason's arrest for soliciting a prostitute, the parties separated. Jason moved in with his parents, and Ali remained in the marital home.

¶11. On January 23, 2024, the chancellor entered a final judgment granting the parties an irreconcilable-differences divorce. After considering the testimony and applicable law, the chancellor entered her findings of fact and conclusions of law. The chancellor awarded the parties joint legal and physical custody of Mia. After considering the *Ferguson* factors,[3] the chancellor distributed the marital estate and awarded the marital home to Ali. After conducting an *Armstrong* analysis,[4] the chancellor found that alimony was unnecessary because the property division settled any inequities between the parties. The chancellor also denied Ali's request for attorney's fees. Ali filed her notice of appeal on April 4, 2024.

## STANDARD OF REVIEW

¶12. On appeal, this Court reviews a chancellor's decision for an abuse of discretion, and we will not disturb a chancellor's findings "unless the chancellor was manifestly wrong, clearly erroneous or applied an incorrect legal standard." *Williams v. Williams*, 347 So. 3d 178, 181 (¶12) (Miss. 2022). However, we review questions of law de novo. *Id*.

## ANALYSIS

---

[3] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

[4] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

## I.      Child Custody

¶13.    Ali argues that in making the custody determination, the chancellor failed to address and apply all relevant and material *Albright* factors. Ali also argues that the chancellor erred by ordering joint legal and physical custody of their daughter without determining whether the parties were capable of sharing joint custody.

¶14.    "The foremost consideration in any custody decision is 'the best interests and welfare of the minor child.'" *Smith v. Smith*, 206 So. 3d 502, 512 (¶24) (Miss. 2016) (quoting *Albright*, 437 So. 2d at 1004-05). In determining the child's best interests, the chancellor considers the following factors set forth by the Mississippi Supreme Court:

> (1) age, health and sex of the child; (2) a determination of the parent [who] has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school[,] and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.

*Powell v. Ayars*, 792 So. 2d 240, 244 (¶7) (Miss. 2001) (citing *Albright*, 437 So. 2d at 1005). "We encourage chancery courts to identify each *Albright* factor, review the evidence presented, and determine in whose favor that factor weighed." *Hendrix v. Whitt*, 373 So. 3d 778, 792-93 (¶49) (Miss. Ct. App. 2023). "Such an analysis enables us to review the chancellor's decision [on appeal] and determine if the evidence in the record supported [her] findings on the factors." *Id.*

¶15.    In the judgment before us, the chancellor performed an *Albright* analysis and

5

discussed her findings under each factor. The chancellor found that the following factors favored Ali: the moral fitness of the parents; the home, school, and community record of the child; and the stability of the home environment. The chancellor found that the following factors favored Jason: continuity of care prior to separation and the physical and mental health of the parents. The chancellor found the following factors to be neutral: the age, health, and sex of the child; the parenting skills of each parent; the employment of each parent and the responsibilities of that employment; the emotional ties between parent and child; the preference of a child and the age sufficient to express a preference by law; and other factors relevant to the parent-child relationship.

¶16. While the chancellor's *Albright* analysis in the case at hand is quite detailed, Ali finds fault with the order as it relates to one statement concerning one factor. The chancellor's order states in part: "(3) the parenting skills of each parent; This factor is neutral and there was no testimony presented on this issue." It is not clear to this Court why the order makes such a statement because the trial transcript contains extensive testimony and evidence regarding Ali and Jason's parenting skills, as well as their willingness and capacity to provide primary childcare for Mia. Under the preceding *Albright* factor in her order, the continuity of care prior to separation, the description of the parties' care for their child is set out in over six pages of the chancellor's order. Other evidence of the parties' parenting skills is discussed by the chancellor throughout her analysis of the other *Albright* factors as well. Despite the statement in the chancellor's order, there is clearly testimony in the record showing the parenting skills of each parent.

6

¶17. As to our review of these issues, our Court stated in *Hall v. Hall*, 134 So. 3d 822, 825-28 (¶¶8, 19, 21) (Miss. Ct. App. 2014):

> In appeals from child-custody decisions, our polestar consideration, like the chancellor's, must be the best interest of the child. *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009) (quoting *Hensarling* [*v. Hensarling*] 824 So. 2d [583,] 587 (¶8) [(Miss. 2002)]). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).
>
> . . . .
>
> An *Albright* analysis is not a mathematical equation. *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001). Further, the "factors are not meant to be weighed equally in every case." *Id*. (citing *Divers v. Divers*, 856 So. 2d 370, 376 (¶27) (Miss. Ct. App. 2003)). Our supreme court has held that "[a]ll the [*Albright*] factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Johnson* [*v. Gray*], 859 So. 2d [1006,] 1013-14 (¶36) [(Miss. 2003)].
>
> . . . .
>
> "In order to determine whether or not the chancellor was manifestly wrong, clearly erroneous or abused his discretion in applying the *Albright* factors, we review the evidence and testimony presented at trial under each factor to ensure his ruling was supported by [the] record." *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001). Further, this Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence. *Carter v. Carter*, 735 So. 2d 1109, 1114 (¶18) (Miss. Ct. App. 1999).

Despite that single sentence in the order, it is clear that the chancellor *did consider* all the evidence concerning the parties' parenting skills, as well as the evidence related to all the other *Albright* factors, and made the decision that it was in the best interest of the child to award joint physical and legal custody to the parties. This Court "must defer to the

chancellor's findings of fact" because we find that they are supported by the evidence in this case. *Id*.

¶18. Having found that the chancellor properly considered all the *Albright* factors, we next address Ali's second argument that the chancellor erred in awarding joint physical and legal custody. This Court has explained that "in an irreconcilable-differences divorce the chancellor may, at her discretion, award joint custody 'upon application of both parents.'" *Keyes v. Keyes*, 134 So. 3d 388, 391 (¶13) (Miss. Ct. App. 2014) (quoting Miss. Code Ann. §93-5-24(2) (Rev. 2013)). Here, Ali and Jason filed a written consent for the chancellor to grant an irreconcilable-differences divorce and to allow the chancellor to decide the certain issues upon which the parties could not agree, including physical and legal custody of Mia. *See* Miss. Code Ann. §93-5-2(3) (Rev. 2021). The supreme court has clarified that in such circumstances, the parties "are consenting and agreeing to [the chancellor's] determination [of custody]." *Crider v. Crider*, 904 So. 2d 142, 148 (¶15) (Miss. 2005).

¶19. The supreme court has provided guidelines for a chancellor's award of joint custody. Joint custody must be in the best interest of the child, and the chancellor must make a determination as to whether the parents are capable of sharing joint custody cooperatively. *Id*. at 147-48 (¶¶13-16). "[U]nless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody." *Id*. at 147 (¶13). We recognize that the decision of whether the parents are capable of sharing joint custody cooperatively "is for the chancellor to determine as he or she is in the best position to evaluate the credibility, sincerity, capabilities and intentions of the parties." *Id*.

¶20.    Pursuant to the parameters set forth in *Keyes*, because the parties filed a joint motion for the chancellor to decide the issue of the physical and legal custody of their daughter, the chancellor had the authority to award joint custody to the parties should she determine that such an arrangement was in the child's best interest. Having heard all the testimony, and having considered all the other evidence admitted during the trial, the chancellor's order gave a detailed analysis of the evidence concerning each of the *Albright* factors. Ultimately, the chancellor found that "it is in the best interest of the minor child that the parties share joint legal and physical custody."

¶21.    Ali further argues that the chancellor made no express finding in her order to show that she determined that the parties were capable of sharing joint custody. We disagree. The chancellor did make that determination because she awarded joint custody! While the chancellor failed to make an express finding that the parties were capable of co-parenting, "we generally proceed on the assumption that [she] resolved" this factual issue in favor of joint custody. *See Rayner v. Sims*, 228 So. 3d 353, 355 (¶7) (Miss. Ct. App. 2017).

¶22.    In *Keyes v. Keyes*, 134 So. 3d 388, 392-93 (¶¶16-17) (Miss. Ct. App. 2014), concerning the chancellor's failure to expressly find that the parents had the ability to share joint custody, this Court held:

> The chancellor was in the best position to evaluate the parties' ability to cooperate. *See Crider*, 904 So. 2d at 147 (¶13); *Phillips* [*v. Phillips*], 45 So. 3d [684,] 695 (¶34) [Miss. Ct. App. 2010)]. After reviewing the record and applicable case law, we conclude that the chancellor did not commit manifest error by awarding the parties joint legal and physical custody. The parties consented to allow the chancellor to determine what form of custody would be in the minor children's best interest, and both parties understood that joint custody was a possible outcome.

> In her memorandum opinion and final judgment, the chancellor noted that "[i]n child-custody cases, the polestar consideration is always the best interest and welfare of the child." *See Reed v. Fair*, 56 So. 3d 577, 582 (¶18) (Miss. Ct. App. 2010) (quoting *Albright*, 437 So. 2d at 1005). After analyzing the *Albright* factors, the chancellor again emphasized the importance of the minor children's welfare, stating that her paramount concern in this case remained the best interest of the two minor children. In light of her findings, the chancellor determined that it would be in the best interest of the minor children to award the parties joint legal and physical custody. The chancellor's decision is supported by facts from the record, and she possessed the discretion to render this custody award since both parties consented to submit the issue of child custody to her determination. Therefore, this issue lacks merit.

(Footnote omitted). The same is true in the present case. The evidence shows that both parties are good parents and have a good relationship with their daughter. Despite the tension between the parents that has nothing to do with the child, there is no evidence that they cannot co-parent. The chancellor was in the best position to make this decision and, as in *Keyes*, the chancellor found that the joint custody arrangement was in the child's best interest. We cannot say that the chancellor committed any reversible error in awarding Ali and Jason joint physical and legal custody of Mia.

## II. Property Division

¶23. Ali asserts that the chancellor erred in equitably dividing and distributing the marital property. Specifically, Ali argues that in dividing the property, the chancellor failed to take into account Jason's marital fault and the fact that Jason dissipated $3,500 in marital funds to pay for his attorney's fees for his solicitation-of-a-prostitute charge. Ali also asserts that the chancellor abused her discretion by depriving Ali of a vehicle when distributing the parties' three marital vehicles.

¶24. "When the parties request that the chancellor resolve the issue of property division,

10

the chancellor must do three things: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably." *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. 2015) (quotation mark omitted). When equitably dividing the marital assets, the chancellor should consider the following factors set forth by the supreme court in *Ferguson*:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

    a. Direct or indirect economic contribution to the acquisition of the property;

    b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

    c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]

3. The market value and the emotional value of the assets subject to distribution[;]

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

11

7.      The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and [ ]

8.      Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928. This Court will affirm a chancellor's distribution of marital assets in a divorce if it is supported by substantial credible evidence. *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

¶25. On appeal, Ali takes issue with the chancellor's application of two of the *Ferguson* factors: (1) the parties' contribution to the stability and harmony of the marital and family relationships and (2) the degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets.

¶26. In assessing Ali and Jason's contribution to the stability and harmony of the marital and family relationships, the chancellor found as follows:

> It is undisputed that the primary cause of the demise of the marriage was due to Jason's attempt to solicit a prostitute. Specifically, his pursuit of a prostitute disrupted this intact, nuclear family and has brought the parties to where they are today. The Court finds that Jason destroyed the stability and harmony of the marriage. Furthermore, the fact that Ali found out about his arrest through a Facebook post instead of her husband was unforgivable and humiliating to both her and her family. Having made that finding, the Court does not turn a blind eye to Ali's failure to fulfill her wifely duties to her husband. The distinction here is the that Jason married Ali knowing of her condition, but chose it. Ali did not choose to be publicly humiliated by his attempt to hire a prostitute.
>
> On the other hand, Jason has made significant financial contributions to the family with his greater earnings, but Ali contributed as well.

¶27. Ali acknowledges that, in applying this factor, the chancellor found that "the primary cause of the demise of the marriage was due to Jason's attempt to solicit a prostitute" and that

"Jason destroyed the stability and harmony of the marriage." However, Ali maintains that the chancellor failed to account for this fault in distributing the marital property and debt. In support of her argument, Ali claims that despite finding Jason at fault for the demise of the marriage, the chancellor still awarded Jason approximately 58.96% of the marital assets and awarded Ali only 41.03% of the marital assets. Ali also references the chancellor's "equalizing property division payment" to Jason in the amount of $63,797.15 in support of her argument that the chancellor furnished Jason with the more favorable property division award.

¶28.   As to Ali's argument that Jason received a more favorable property division award, this Court's calculation of the monetary value of the marital assets distributed to each party differs from the amounts submitted by Ali in her appellate brief and from the totals calculated by the chancellor in the "Equalizing Property Division Payment" section of the final judgment. Although characterized as an "equalizing property division payment," we find that the $63,797.15 awarded to Jason reflects Jason's share of the equity in the marital home. In her valuation of the marital home prior to distributing the marital assets, the chancellor indicated that she would award Jason his share of the equity in the home. While Jason may have received a slightly higher net value of marital assets, the chancellor awarded Ali the marital home and a larger share of the equity.

¶29.   Ali cites several cases in support of her claim that this Court should reverse and remand this case based on the chancellor's failure to factor in Jason's "substantial" marital fault in the equitable distribution of the marital property: *Watson v. Watson*, 882 So. 2d 95

13

(Miss. 2004); *Singley v. Singley*, 846 So. 2d 1004 (Miss. 2002); *Hammond v. Hammond*, 327 So. 3d 173 (Miss. Ct. App. 2021); *Ellison v. Williams*, 282 So. 3d 447 (Miss. Ct. App. 2019). However, we find the facts of those cases distinguishable from the facts before us. In *Singley*, 846 So. 2d at 1006 (¶12), the supreme court reversed the chancellor's equitable distribution of the marital estate after finding that the chancellor's 50/50 division of the assets "place[d] minimal weight" upon the wife's "numerous incidents" of adultery that occurred over the last fifteen years of the parties' marriage and the effect of this adultery on the marriage. In the present case, the parties were married for approximately six and a half years, and Jason admitted to being arrested once for attempting to solicit a prostitute. In *Watson*, *Hammond*, *and Ellison*, the appellate court reversed chancellors' divisions of the marital estates after finding in each case that the chancellor failed to consider a spouse's adulterous conduct and its impact on the stability and harmony of the marriage when equitably dividing the assets. *See Watson*, 882 So. 2d at 108-09 (¶¶67-68) (supreme court reversing the chancellor's 50/50 division of the marital estate after finding that the chancellor "obviously ignored" one party's adulterous conduct and its impact and burden on the stability and harmony of the marriage when dividing the assets); *Hammond*, 327 So. 3d at 179 (¶¶17-18) (this Court finding the chancellor failed to consider a spouse's adultery when dividing the marital estate and accordingly reversing and remanding the matter with instructions to reconsider the division of the marital estate after giving appropriate weight to the spouse's adultery and its impact on the parties' marriage); *Ellison*, 282 So. 3d at 451 (¶¶11-12) (this Court reversing the chancellor's division of the marital estate where the

14

chancellor failed to consider one spouse's adultery and its effect on the stability and harmony of the home when dividing the estate, even though the other spouse "receive[d] a slightly larger portion of the marital estate"). Here, the chancellor's judgment shows that she properly considered Jason's conduct and its effect on the stability and harmony of the marriage when dividing the marital assets.

¶30. Additionally, this Court has held that while "[m]arital misconduct is a viable factor entitled to be given weight by the chancellor when the misconduct places a burden on the stability and harmony of the marital and family relationship[,] chancellors should not view equitable distribution as a means to punish the offending spouse for marital misconduct." *McKenzie v. McKenzie*, 397 So. 3d 510, 517 (¶14) (Miss. Ct. App. 2024) (citation omitted). Rather, "[f]airness is the prevailing guideline in marital division." *Id*. at 518 (¶14) (quoting *Ferguson*, 639 So. 2d at 929).

¶31. The chancellor's judgment shows that in dividing the marital assets, she applied the *Ferguson* factors and considered her finding that Jason's "pursuit of a prostitute" destroyed the stability and harmony of the marriage. After our review, we find that the chancellor "appropriately considered the factor [of marital fault] without using the property division as a means to punish [Jason] for his misconduct." *Id*. at (¶15) (quotation marks omitted).

¶32. Ali also argues that the chancellor "refus[ed] to acknowledge that Jason wastefully dissipated $3,500 in marital funds to pay his attorney's fees for his solicitation of a prostitute charge." In assessing the degree to which Ali and Jason have expended, withdrawn, or otherwise disposed of marital assets, the chancellor found as follows: "Ali testified that Jason

15

paid to have his record expunged after his arrest, but he testified that he used money that he earned after their separation to pay his legal fees regarding the solicitation of a prostitute. The court finds this factor inapplicable in this case."

¶33. Jason's order of expungement was entered in justice court a few weeks before the parties' date of demarcation for the accumulation of marital property. However, the testimony at trial is unclear as to when Jason paid his attorney.

¶34. "While Mississippi has no specific test for discerning the dissipation of marital assets, we find it reasonable when considering if marital assets have been dissipated to look to whether the assets in question were actually wasted or misused." *Reynolds v. Reynolds*, 287 So. 3d 1019, 1025-26 (¶20) (Miss. Ct. App. 2019) (citation and quotation mark omitted). Here, Ali "had a duty to present the evidence of the dissipation of assets." *Manor v. Manor*, 404 So. 3d 1256, 1264 (¶17) (Miss. Ct. App. 2024) (citing *Reynolds*, 287 So. 3d at 1026 (¶22)). Ali presented no evidence or testimony at trial as to when Jason paid his attorney's fees. Accordingly, we find the chancellor did not abuse her discretion in determining that no dissipation of assets occurred.

¶35. Lastly, Ali claims that the chancellor abused her discretion by failing to award Ali any of the parties' three marital vehicles. In her appellate brief, Ali admits that she cannot drive. However, she explains that she requested one of the parties' vehicles so that "her family and friends could avoid putting miles on their own vehicles when transporting Ali."

¶36. Ali failed to cite any caselaw or authority showing how the chancellor abused discretion in awarding the three vehicles to Jason. Accordingly, we do not address her

16

argument, as it is procedurally barred on appeal. *Gerty v. Gerty*, 296 So. 3d 704, 707 (¶6) (Miss. 2020); M.R.A.P. 28(a)(7). Procedural bar notwithstanding, this Court has repeatedly held that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). Keeping in mind our standard of review, we cannot say that the chancellor committed any reversible error in awarding Jason the marital vehicles.

### III.  Alimony

¶37.   Ali also argues that the chancellor erred by failing to award her alimony. Ali claims that the chancellor erroneously based her decision not to award alimony on "a shifting allocation of fault for the destruction of the marriage." Ali submits, instead that, the chancellor should have focused on Ali's deficit after the property division and the disparity between Ali's and Jason's income and earning capacity. Ali maintains that the chancellor's division of the marital assets and debt left her at "a severe financial deficit," thus warranting an award of alimony.

¶38.   This Court has explained that "[i]f the distribution of the parties' assets, including any separate property, fails to adequately provide for the parties, the chancellor then considers whether to award alimony to one of the parties." *Jenkins v. Jenkins*, 67 So. 3d 5, 9 (¶11) (Miss. Ct. App. 2011). In considering whether alimony is appropriate, chancellors must apply the factors set forth in *Armstrong*, 618 So. 2d at 1280. *Layton v. Layton*, 181 So. 3d 275, 279-80 (¶10) (Miss. Ct. App. 2015). These factors include:

1.      The income and expenses of the parties;

17

2.      The health and earning capacities of the parties;

3.      The needs of each party;

4.      The obligations and assets of each party;

5.      The length of the marriage;

6.      The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7.      The age of the parties;

8.      The standard of living of the parties, both during the marriage and at the time of the support determination;

9.      The tax consequences of the spousal support order;

10.     Fault or misconduct;

11.     Wasteful dissipation of assets by either party; or

12.     Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280.

¶39.    When we review a chancellor's decision regarding alimony, "we do not apply or reweigh the *Armstrong* factors de novo but instead recognize that alimony awards are within the discretion of the chancellor, and [the chancellor's decision] will not be reversed on appeal unless the chancellor abused his discretion." *Layton* 181 So. 3d at 282 (¶18) (citation and quotation mark omitted).

¶40.    In reviewing the chancellor's application of the *Armstrong* factors, we find that the chancellor examined the parties' income and found that Jason earns substantially more than

18

Ali. As for Jason's earning capacity, the chancellor found that Jason's income is based on commissions, and if Jason does not make sales, he does not get paid. The chancellor recognized Ali's significant health conditions, as well as Ali's limited earning capacity as a teacher. The chancellor ultimately found that both Jason and Ali are earning as much as their individual capacities allow. The chancellor further determined that "[n]either party has a deficit in their expenses" or "any unusual expenses that create increased needs."

¶41. As for the parties' obligations and assets, the chancellor complimented the parties for their minimal debt. The chancellor stated that "while Ali is assuming significant marital debt in that she will have the burden of the mortgage, she is also receiving the corresponding asset that goes with it."

¶42. In assessing the *Armstrong* factor of the length of the marriage, the chancellor explained that she placed "heavy emphasis" on the fact that the parties' marriage of six and a half years is of "extremely short duration." The chancellor found that the primary cause of the demise of the marriage was due to Jason's attempt to solicit a prostitute. However, the chancellor also found that "Jason put up with a lot from Ali and her overbearing family that clearly caters to Ali," describing Ali's mother as "overbearing and demanding." The chancellor ultimately determined that although Jason was at fault for the marital breakdown, "there is plenty of fault to assess both parties."

¶43. Finally, the chancellor explained that after considering the *Ferguson* factors and *Armstrong* factors, she found that the property division settled any inequities between the parties. The chancellor also awarded Ali approximately $77,000 in non-marital assets,

compared to the $9,000 in non-marital assets awarded to Jason. After finding that Ali was not left with a deficit, the chancellor declined to award alimony.

¶44. We recognize that "alimony should not be considered unless the property division results in a 'deficit' to one spouse." *Layton*, 181 So. 3d at 282-83 (¶17). This Court has clarified that "the question is whether the spouse seeking alimony is left with a deficit with respect to having sufficient resources and assets to meet his or her needs and living expenses." *Id*. (emphasis and quotation mark omitted). Our review of the record confirms that Ali was not left with a deficit in being able to pay for her needs and living expenses. Because the chancellor's decision not to award alimony to Ali is supported by substantial evidence, we find no abuse of discretion.

### IV.    Attorney's Fees

¶45. Finally, Ali argues that she met her burden of establishing an inability to pay her own attorney's fees, and therefore the chancellor abused her discretion in denying Ali's request for attorney's fees.

¶46. "Attorney's fees may only be awarded to a party who has shown an inability to pay his or her own fees." *Dauenhauer v. Dauenhauer*, 271 So. 3d 589, 600 (¶48) (Miss. Ct. App. 2018). Ali, as the party seeking attorney's fees, bears the burden of proving her inability to pay. *Manor*, 404 So. 3d at 1266 (¶22). "A party's ability to pay fees is based on their income, expenses, and assets. Assets received by a spouse as part of equitable distribution may be considered in determining ability to pay." *McKenzie*, 397 So. 3d at 522 (¶34) (quoting Deborah H. Bell, *Bell on Mississippi Family Law* § 10.01[3][a], at 333 (3d ed.

2020)). "[T]he issue of whether to award attorney's fees in a divorce case is a discretionary matter left to the chancellor, [and] this Court is reluctant to disturb such a finding." *Williams v. Williams*, 179 So. 3d 1242, 1254 (¶42) (Miss. Ct. App. 2015).

¶47. The record reflects that Ali incurred approximately $20,000 in attorney's fees and expenses. At trial, Ali testified that based on her income, she did not have the ability to pay her attorney's fees in a reasonable time. She testified that in order to pay her attorney's fees within a reasonable amount of time, she would have to liquidate some of her certificates of deposit. The record reflects that in equitably distributing the parties' assets, the chancellor awarded Ali non-marital property in the form of three CDs worth approximately $75,000.

¶48. In addressing Ali's request for attorney's fees, the chancellor held as follows:

> Ali incurred attorney fees and expenses of more than $20,000.00. Although the Court finds that ultimately Jason was the cause of the marital breakdown, Ali is far from perfect. Her family caters to her and her condition, with her mom going so far as constantly messaging Jason to see if Ali (a grown 33 year old woman) has taken her medicine and if she is awake for work. In addition to being deprived of Ali's sexual companionship, often Jason was the one left caring for both [Mia] and Ali, while Ali would lie about with some malaise and couldn't be bothered to even text her mother back and tell her that she was okay.

> The Court finds that Ali has the ability to pay her attorney fees. In particular, she has access to approximately $75,000.00 in CD[s] that this Court classified as non-marital with which she can pay her attorney fees.

¶49. Ali argues that the chancellor's decision is in conflict with caselaw stating that a party should not be required to liquidate modest assets to pay attorney's fees when that party lives on a modest salary. To clarify, this Court has held that "a party is not required to liquidate *all* assets to pay for attorney's fees." *McKenzie*, 397 So. 3d at 522 (¶34) (emphasis added);

21

*see also Branch v. Branch*, 174 So. 3d 932, 946 (¶60) (Miss. Ct. App. 2015) ("Appellate courts have found a party is not required to liquidate all assets to pay for attorney's fees."). Ali owns approximately $75,000 in CDs, and her attorney's fees and expenses amount to approximately $20,000. Using a portion of her CDs to pay her attorney's fees would not require Ali to liquidate all her assets or even a "significant part" of her assets. *See Alford v. Alford*, 298 So. 3d 983, 994 (¶38) (Miss. 2020).

¶50. After our review, we cannot say that the chancellor abused her discretion in denying Ali's request for attorney's fees.

## CONCLUSION

¶51. For the reasons discussed above, we find that the chancellor did not abuse her discretion in awarding Ali and Jason joint physical and legal custody of Mia, dividing the marital estate, denying alimony, or denying Ali's request for attorney's fees, and we therefore affirm the chancellor's judgment as to all issues on appeal.

¶52. **AFFIRMED.**

**WILSON, P.J., LAWRENCE, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. CARLTON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., WESTBROOKS, McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶53. I concur with the findings in Parts II, III, and IV of the majority opinion. However, I respectfully dissent as to Part I of the majority opinion, specifically, the majority's decision to affirm the chancellor's child custody award. I find that the chancellor erred in her *Albright*

22

analysis[5] and in awarding the parties joint custody without making any determination as to whether the parties are capable of sharing joint custody cooperatively. Accordingly, I would reverse the chancellor's custody determination and remand for further proceedings.

¶54. "[T]he polestar consideration in child custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. In determining the child's best interests, the chancellor considers the factors articulated by the Mississippi Supreme Court in *Albright*, 437 So. 2d at 1004-05. This Court has stated that "[t]he chancellor must address each *Albright* factor that is applicable to the case." *Harden v. Scarborough*, 240 So. 3d 1246, 1251 (¶11) (Miss. Ct. App. 2018) (citing *Powell v. Ayars*, 792 So. 2d 240, 244 (¶10) (Miss. 2001)). When reviewing a chancellor's application of the *Albright* factors on appeal, "we review the evidence and testimony presented at trial under each factor to ensure [the chancellor's] ruling was supported by the record." *Hall v. Hall*, 134 So. 3d 822, 828 (¶21) (Miss. Ct. App. 2014) (quoting *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001)). "[T]his Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Id*.

¶55. Upon review of the chancellor's *Albright* analysis, I find that the chancellor erred in her findings as to the parenting-skills factor. Under this factor, which requires the chancellor to examine which parent has the best parenting skills and the willingness and capacity to provide primary childcare, the chancellor found: "This factor is neutral and there was no testimony presented on this issue." However, the trial transcript contains extensive testimony

---

[5] *Albright v. Albright*, 437 So. 2d 1003, 1004-05 (Miss. 1983).

and evidence regarding Ali's and Jason's parenting skills, as well as their willingness and capacity to provide primary childcare for Mia. It is clear that the chancellor did not consider this extensive testimony and evidence in making her finding as to this factor. Because the chancellor's finding is not supported by substantial credible evidence, I would reverse the chancellor's custody determination and remand the matter for the chancellor to consider the evidence relevant to the parties' parenting skills and willingness and capacity to provide primary childcare and to properly apply this evidence in conducting her *Albright* analysis.

¶56. After the chancellor conducted her *Albright* analysis, she awarded the parties joint legal and physical custody of Mia. The chancellor determined that joint legal and physical custody "is in the best interest of the minor child[.]" However, in awarding joint custody, the chancellor failed to address whether Ali and Jason are capable of sharing joint custody cooperatively.[6]

¶57. As discussed by the majority, this Court has held that "in an irreconcilable-differences divorce the chancellor may, at her discretion, award joint custody 'upon application of both parents.'" *Keyes v. Keyes*, 134 So. 3d 388, 391 (¶13) (Miss. Ct. App. 2014) (quoting Miss. Code Ann. § 93-5-24(2)). In cases like the one before us, where the parties file a written consent for the chancellor to grant an irreconcilable-differences divorce and to allow the chancellor to decide the certain issues upon which the parties could not agree, including physical and legal custody of a child, the supreme court has clarified that in such circumstances, the parties "are consenting and agreeing to [the chancellor's] determination

---

[6] *See Crider v. Crider*, 904 So. 2d 142, 147-48 (¶¶13-16) (Miss. 2005) (discussed *infra*).

[of custody]." *Crider*, 904 So. 2d at 148 (¶15).

¶58. In awarding joint custody, the chancellor must make a determination as to whether the parents are capable of sharing joint custody cooperatively. *Id*. at 147-48 (¶¶13-16). "[U]nless the parents are capable of sharing joint custody cooperatively, it is incumbent upon a chancellor not to award joint custody." *Id*. at 147 (¶13). Here, the chancellor awarded joint custody to Ali and Jason, but she failed to make any on-the-record findings as to whether the parties were capable of cooperatively sharing joint custody. This Court "cannot properly review the chancellor's child-custody determination without findings in support of his determination." *Robles v. Gonzalez*, 246 So. 3d 945, 953 (¶28) (Miss. Ct. App. 2018).

¶59. In *Keyes*, the parties filed a consent to an irreconcilable-differences divorce and to allow the chancellor to decide certain issues, including physical and legal custody of the parties' children. *Keyes*, 134 So. 3d at 389 (¶2). The chancellor awarded the parties joint custody of their children; however, the chancellor failed to make a determination as to whether the parties were capable of cooperatively sharing joint custody. *Keyes*, 134 So. 3d at 391 (¶12). After reviewing the record and the chancellor's *Albright* analysis, this Court affirmed the chancellor's award of joint custody after finding that "the chancellor's decision is supported by facts from the record." *Id*. at 393 (¶17).

¶60. Unlike *Keyes*, I find that the chancellor in the case before us failed to consider all the testimony and evidence in conducting her *Albright* analysis. The record is clear that Ali and Jason have a hostile relationship and do not get along. Accordingly, I find that the chancellor's custody determination is not supported by substantial credible evidence in the

25

record. I would instruct the chancellor on remand to evaluate and make on-the-record findings as to whether the parties can cooperatively co-parent if joint physical custody is again awarded.

¶61. Because I find that the chancellor erred in her application of the *Albright* factors and in awarding joint custody without making a determination as to whether the parties are capable of sharing joint custody cooperatively, I respectfully concur in part and dissent in part from the majority's opinion.

**BARNES, C.J., WESTBROOKS, McDONALD AND McCARTY, JJ., JOIN THIS OPINION.**